**THE OHIO AND MISSISSIPPI R. W. CO. *v.* HATTON.**

RAILROAD.—*Action by Passenger for Carrying him Past Destination.*—*Complaint.*—In an action by a passenger, against a railroad company, to recover damages for carrying him past the station to which he had purchased a ticket, it is necessary that he aver in his complaint, that the train upon which he took passage was one which, by its running arrangements, under the rules and regulations of the company, should have stopped at such station, or that, by a special contract, the company had agreed to carry him to that station, on that train.

SAME.—*Regulations of Company can not be Altered by Conductor.*—Where a passenger, having a ticket to a certain station, takes passage upon a train which, under the regulations of the company, does not stop at that station, the fact that the conductor takes up his ticket and agrees to stop the train, and let the passenger off, at that station, will not bind the company.

SAME.—*Notice to Passenger.*—Where, in such case, the passenger has a ticket containing a stipulation, that it is "good only on trains stopping at station named," and he is informed by the conductor that that train does not stop at that station, the passenger can not infer any right on the part of the conductor to agree to stop at such station.

From the Jackson Circuit Court.

*C. A. Beecher* and *E. C. Devore*, for appellant.

*W. K. Marshall*, for appellee.

BIDDLE, C. J.—Action by the appellee, as a passenger, against the appellant, as a common carrier, for not carrying him as per agreement.

The complaint avers, that the appellant owns and operates a line of railroad running from Cincinnati, Ohio, through the States of Indiana and Illinois, to St. Louis, in Missouri, and is a common carrier of passengers from Cincinnati to St. Louis, and to and from all intermediate stations on said road, and particularly from Brownstown station, in Jackson county, in the State of Indiana, to Washington, in Daviess county, Indiana, and thence back again, and has so been a common carrier of passengers for ten years last past; that, on the 13th day of January, 1875, while said defendant was so a common carrier as aforesaid, plaintiff applied to said defendant, at its depot

at Brownstown station, in Jackson county, Indiana, for a passage, and to be carried as a passenger, in its cars running on its said railroad, from said station of Brownstown to said station of Washington, in Daviess county, Indiana, and thence back again to said Brownstown station; that said defendant then and there agreed with plaintiff, and undertook, to carry him as a passenger in its said cars, on its said road, from said station of Brownstown to said station of Washington, and back again, for and in consideration of certain hire and reward, to wit, the sum of five dollars, to be then and there paid in advance by said plaintiff, and which said sum of five dollars the plaintiff did then and there pay to defendant for the use and consideration aforesaid, and received from said defendant a ticket, to be shown and exhibited to the conductors and agents of defendant on the cars running on said railroad, as evidence that the said plaintiff had paid his fare in full for his carriage and passage from said station of Brownstown to said station of Washington, and return. The plaintiff thereupon took passage on defendant's cars as aforesaid, at said station of Brownstown, to wit, on said 13th day of January, 1875, to be carried, and was carried, by them as a passenger, from said station of Brownstown to said station of Washington, and again, on the 18th day of January, 1875, reembarked on board of said defendant's cars, at said station at Washington, to be by defendant carried as a passenger back to said station of Brownstown; that when said train and cars, in which plaintiff had taken passage as aforesaid, had started from said station of Washington towards said station of Brownstown, the conductor and agent of defendant took up said ticket as aforesaid, and became thereby bound to carry plaintiff to said station, and there allow him to disembark from said cars, and defendant has ever since had possession of the same, so that plaintiff can not now file the same, or a copy thereof, herewith; that when said train and cars, in which plaintiff had taken

passage as aforesaid, arrived at said station of Browns-town, defendant neglected and refused to stop the same, and allow plaintiff to disembark at said station of Brownstown, but wrongfully and purposely, and without any fault or negligence of plaintiff, and without his consent and against his will, carried him past said station of Brownstown, and would not stop or allow plaintiff to get off said train and cars, and gave him no opportunity to get off the same, until they had carried him to Seymour, another station on said railroad."

To this complaint a demurrer, stating as cause that it did not show facts sufficient to constitute a cause of action, was overruled, and exceptions to the ruling reserved.

Issues were joined, a trial had, verdict for appellee found, and, over a motion for a new trial and exceptions, a judgment on the verdict rendered.

In favor of the demurrer, it is insisted by the appellant:

"1. The pleader should have alleged in the complaint, in addition to the averments therein contained, that, by the rules and regulations of appellant, governing the running of trains on her said railway, the train of cars which appellee got aboard of at Washington, Indiana, to return upon to Brownstown, was accustomed to stop at the station of Brownstown, and that said station of Brownstown was, by the rules and regulations of appellant, a regular stopping place for said train; or,

"2. That the appellant did not furnish other passenger trains, running daily, sufficient to accommodate the travel, and regularly stopping at said station of Brownstown; or,

"3. That, before and at the time appellee went aboard of the train at said station of Washington, to return to said station of Brownstown, he went with the consent and agreement of an authorized employee of

appellant to stop the train at said station of Browns-
town; or,

"4. That the appellee expressly purchased the ticket
for said train, and at the time was informed by the agent
of the appellant that the train would stop at the said sta-
tion of Brownstown."

We think the demurrer to the complaint is well taken.
As the contract set forth does not show that the appel-
lant undertook to carry the appellee upon any particular
train or car, its obligation is no greater or more specific
than to carry according to its general public arrange-
ments. It was, therefore, necessary for the appellee to
allege in his complaint, that the train upon which he
took passage, on return from Washington to Browns-
town, was one which, by its running arrangement,
stopped at Brownstown. It was the duty of the appellee,
before he took passage on return from Washington to
Brownstown, to ascertain what trains stopped at Browns-
town by their public running arrangement, unless he
could establish a specific contract to be carried other-
wise. Having done neither, he can not recover. *The
Pittsburgh, Cincinnati and St. Louis R. W. Co.* v. *Nuzum*,
50 Ind. 141; *The Ohio and Mississippi R. W. Co.* v. *Ap-
plewhite*, 52 Ind. 540.

The court instructed the jury as follows:

"No. 3. The mere fact of taking up the ticket from a
passenger on a train which is not accustomed to stop at
the station to which the passenger desires to go, and to
which station his ticket entitles him to go, creates no
obligation on the defendant to stop and put him off at
such station, unless you find that the defendant's em-
ployee, the conductor of the train, at the time plaintiff
got upon the train, agreed with the plaintiff to let him
off at such station. But if you believe from such evi-
dence, that such conductor, on receiving plaintiff's ticket,
agreed, that he would put him off at a given place, and

then took him past that station, then the plaintiff is entitled to recover."

This instruction is too general in its terms. It is not competent, we think, for a conductor to agree with an individual passenger to carry him to a given place, and stop at that place to allow him to leave the train, and thus bind the railroad company, unless the place at which he is to stop is a regular station of the train which he is conducting. Such a power can not be implied as within the proper duties of a conductor; nor would it be consistent with public policy. A railroad company that holds itself out to the public as a common carrier of passengers, establishes its routes and stations, and advertises its running arrangements, thereby pledges itself to the public to run accordingly; and if it was in the power of a conductor to stop at different stations from those established for the line, or alter the running arrangement of the road, to accommodate a particular passenger, he would thereby greatly incommode the public generally, for the sake of a single passenger. The duty of a conductor is to run the trains according to the public arrangements, and he has no power to change them; and a passenger has no right to infer that a conductor has any such power from his general duties as a conductor, and no reason to suppose that he could bind the railroad company by any such an agreement. Such an agreement must be distinguished from the special contract set up in the complaint, which, as it is averred, was made by the company itself.

This instruction is especially erroneous as applicable to the evidence in the case. By the appellee's own testimony it is shown, that, after he got upon the train at Washington, on his return to Brownstown, and before the train started, he was told by the conductor that that train did not stop at Brownstown, and he could not stop there. It was also shown on the appellant's ticket, that it was "good only on trains stopping at sta-

tion named." With this evidence before him, the appellee must have known that the conductor had no power to make such an agreement with him as is contemplated by the instruction under consideration.

As the case must be reversed, and a new trial granted, we do not examine the question as to the sufficiency of the evidence to support the verdict.

The judgment is reversed, at the costs of the appellee, and the cause remanded for further proceedings, with instructions to sustain the motion for a new trial, and sustain the demurrer to the complaint.