[Ala. Great Southern Railroad Co. v. Carmichael.]

# Ala. Great Southern Railroad Co *v.* Carmichael.

90 19
95 395
90 19
117 420

*Action for Damages by Passenger, carried beyond Destination.*

1. *Carrying passenger beyond destination, when travelling in violation of rules of railroad company.*—A passenger travelling on a railway train by arrangement with the conductor, and being carried several miles beyond her destination, can not recover damages on that account, when it appears that she knew the rules of the railroad company forbade the train to stop at that point, and that the regular agent had refused her a ticket for that reason.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

. This action was brought by Mrs. Lizzie A. Carmichael against the appellant corporation, to recover damages on account of defendant's wrongful act in carrying plaintiff, travelling as a passenger on one of its trains, two miles or more beyond her destination, and there putting her off in the nighttime at a distance from any residence. The cause was tried on issue joined on the plea of not guilty, and resulted in a verdict for plaintiff, for $3,400. The material facts are stated in the opinion of the court. The principal matters here assigned as error are, certain portions of the general charge of the court below, a charge given at the request of the plaintiff, and the refusal of several charges asked by the defendant.

The general charge of the court was in these words, the bracket figures showing the portions particularly excepted to: "A person, knowing that a train will not stop at a point that is known to be against the rules and regulations of the railroad company, has no right to get on the train and require it to stop at a point where it is prohibited to stop. Therefore, a passenger who comes on a train, knowing that it is not allowed to stop at a particular point, can not complain because not allowed to get off there, unless there is something else to be considered in the case, something which entitles him to be put off. [1] If, however, at the time of taking passage, the conductor agrees to stop and put him off, then he will be under obligation to do so, and the passenger will have a right to subject the company to damages for failing to put him off at such prohibited station, if he entered on the journey with that

understanding with the conductor. [2] If plaintiff was a passenger on this train by reason of having taken passage by permission of the conductor, and paid her fare; then she was entitled to be treated as a passenger, and to have the obligation of the railroad company performed in respect to carrying her to the place of her destination, and allowing her an opportunity to get off safely. [3] If the jury find that plaintiff was a passenger, and entitled to be put off at Jonesboro, by virtue of an agreement with the conductor, upon the payment of her fare to that place, and that she was negligently carried beyond that point, and put off at another place; this would show a violation of her legal rights as a passenger, and would entitle her to recover, if there was such agreement. [4] When a person gets on a train, pays her fare by agreement with the conductor, and takes passage to a particular point on the line of road, she becomes a passenger, although she may not have a ticket."

The charge given by the court on request of the plaintiff, asserted the right to recover exemplary damages, "when the negligence complained of is so gross as to evince an entire want of care, and is sufficient to raise a presumption that the defendant, being cognizant of the probable consequences of his acts, was indifferent to the danger to which the persons of others might be thereby exposed."

The charges asked and refused were as follows: (1.) "If the jury believe the evidence, they must find for the defendant." (2.) "If the jury believe all the witnesses to be equally credible and unimpeached, the plaintiff is not entitled to a verdict." (3.) "Under the facts and circumstances of this case, the plaintiff is not entitled to recover any exemplary damages." (4.) "If the jury believe the evidence, plaintiff is not entitled to recover any damages except nominal." (6.) "In order to recover exemplary damages, plaintiff must show that she has suffered some actual damages; and if she has not shown that she suffered some actual damages, she is not entitled to recover any but actual [?] damages." (7.) "In order for the plaintiff to recover in this case, she must prove each and every material allegation of her complaint, to the satisfaction of the jury, by a preponderance of the testimony; and if she has not done this, she is not entitled to a verdict." (9.) "The plaintiff has proved no actual damages, and is only entitled to recover nominal damages, if any at all." (10.) "If the jury believe from the evidence that the plaintiff was duly informed that it was against the rules of the company for her to purchase a ticket from Meridian to Jonesboro, or to Bessemer, and, being so informed, got upon said train without permission; and fur-

[Ala. Great Southern Railroad Co. v. Carmichael.]

ther, that both she and the conductor, knowing said rule, agreed to violate the same; and if they further believe that she suffered any damage from the failure of the conductor to put her off,—then this defendant is not liable in damages to plaintiff."

WOOD & WOOD, and S. F. RICE, for appellant, cited *Railroad Co. v. Pierce*, 3 A. & E. R. R. Cases, 341; *Logan v. Railroad Co.*, 12 *Ib.* 141; *Wells v. Ala. G. S. Railroad Co.*, 6 So. Rep. 737; 50 Ind. 141; 60 Ind. 16; 92 Penn. St. 21, or 37 Amer. Rep. 651; 61 Texas, 499; 55 Texas, 239; 71 Penn. St. 436; *Cummins v. Beaumont*, 68 Ala. 204.

SMITH & LOWE, *contra*, cited *Ala. G. S. Railroad Co. v. Yarbrough*, 83 Ala. 241; *S. & N. Ala. R. R. Co. v. Huffman*, 76 Ala. 496; *Parker v. Mise*, 27 Ala. 480.

STONE, C. J.—The plaintiff, a female, took the east-bound train of the defendant railroad company at Meridian, Mississippi, in the evening—about dusk—on April 23, 1887. The train of that hour was what is known as the "limited," or "fast train," which makes but few stops, and is not intended for local travel. The railroad furnishes another train, which makes daily trips each way, and is designed to meet that want, and stops at every station on the road. On two points there is a palpable conflict in the testimony. Mrs. Carmichael testified, that she desired to go to Jonesboro, Alabama, and that she applied to the ticket-agent at Meridian for a ticket to Jonesboro, and that he refused to give it to her. She testified further, that the baggage-master refused to give her a check for her baggage, because she had no ticket. According to her testimony, the train did not stop at Jonesboro, but carried her about two miles further east, to a stopping-place for day trains, near Bessemer, and there put her off. Her husband testified, that he was at Jonesboro when the train passed, waiting to receive her, and that the train did not stop—merely slowed up, coming nearly to a stop, and then moved on. She had testified that, when the ticket-agent refused her a ticket to go on that train, she saw the conductor, and he told her to get on the train, and he would receive her fare, and put her off at Jonesboro. This is the version given in the plaintiff's testimony.

The testimony for the railroad, if believed, proves that plaintiff made no mention of Jonesboro as her destination, but that in all she said she mentioned Bessemer as the place at which she wished to be put off. Defendant's witnesses testified, that

the train stopped to take on water very near Jonesboro station, with the coach in which plaintiff was riding almost opposite the depot, and that it remained stationary to take on water about three minutes. This was sufficient time for her to leave the train, if it be believed. It was also testified by defendant's witnesses, that, at this time, water being scarce in Birmingham, trains were ordered to take water at Jonesboro, and that the fast, or limited trains, were included in this order. The testimony was full and undisputed, however, that the established orders and regulations of the railroad company were, that passengers should not be received on, or allowed to depart from the trains known as "fast," or "limited," except at the more important stations where they regularly made stops; and that neither Jonesboro nor Bessemer was one of the stopping-places for that class of trains. We think the inference from plaintiff's testimony alone is irresistible, that when she made application at Meridian, for a ticket to travel on the fast train, it was denied her because the train did not stop at the place she was going to; and this, whether she applied for a ticket to Jonesboro, or to Bessemer. She, therefore, travelled on a train, and to a destination, in violation of the orders of the railroad company, with knowledge that she had been refused a ticket on that account.

It is contended for appellee, that "there was no evidence to support the charges asked in relation to the violation of the rules of the company by appellee and the conductor." The brief then refers to the testimony of four of the railroad's employès, to the effect that, water being scarce in Birmingham at that time, trains were ordered to take water at Jonesboro; and to the testimony of the three that were on the train, that a stop of three minutes was made that night at Jonesboro, and water taken on. The brief then continues: "For this reason alone, if for no other, the charges in relation to a violation of the rules of the company by the plaintiff and the conductor were properly refused." The meaning of this argument is, that there was no testimony to support the hypothesis of the charges, and that being abstract, they were properly refused. 3 Brick. Dig. 113, §§ 106 *et seq.*

We have stated the two points on which the testimony of the opposing parties to this suit is antagonized. To adopt the argument noted above, we must take as true the testimony of Mrs. Carmichael, that when she applied for a ticket, and when she negotiated with the conductor for passage without a ticket, she represented Jonesboro as her place of destination, against the testimony of four witnesses that she named Bessemer as the place at which she desired to get off; and that we take as

true the testimony of three of those four witnesses that the train did stop at Jonesboro for three minutes, against the testimony of herself and husband that it did not stop. As we have said, we think the conclusion irresistible from the testimony of Mrs. Carmichael herself, that she was refused a ticket because the train was not allowed to stop at the place of her destination. This was sufficient notice to her that any agreement the conductor might make to put her off at the place she named, would be a violation of the rules of the company. Conceding all the plaintiff contends for—namely, that the conductor agreed to put her off at Jonesboro, and failed to do it, and that the flagman was rude or rough in getting her off the train at a very unsuitable place—is the corporation liable for the injury or indignity? Counsel have produced no authority which sustains such position.

"A railroad conductor can not be required by a passenger to deviate from his train orders, on the latter's statement of an alleged agreement with the company conflicting therewith." 2 Wood's Railway Law, § 355. "But a passenger must take notice of the published rules of a railway company. He is not entitled to damages, if he takes a train which, by such rules, does not stop at the station to which he desires to go." *Ib.* § 356. "Every one is bound to know that a railway conductor has no general power to run his train, except in conformity to the schedule."—*Lake Shore & M. R. R. Co. v. Pierce*, 3 Amer. & Eng. R. R. Cases, 340; *Logan v. Han. & St. Jo. Railway Co.*, 12 *Ib.* 141. "A passenger who voluntarily rides in a baggage car, by permission of the conductor, but against the rules of the railroad, conspicuously posted in that car, and is injured in consequence of riding there, can not recover from the railroad company on account of its negligence."—*Penn. R. R. Co. v. Langdon*, 92 Penn. St. 21; s. c., 37 Amer. Rep. 651. "A duty of a railroad company to the public requires that she should run her trains according to the rules and regulations, without infringing upon them to accommodate a single passenger. It is the duty of a person, about to take passage, to inquire when, where, and how he can go or stop according to regulations; and if he makes a mistake, which is not induced by the agents of the railroad company, he has no remedy.—*P., C. & St. L. Railway Co. v. Nuzam*, 50 Ind. 141. "It is not competent, we think, for the conductor to agree with an individual passenger to carry him to a given place, and stop at that place to allow him to leave the train, and thus bind the railroad company, unless the place at which he is to stop is a regular station on the train which he is conducting."—*O. & M. Railway Co. v. Hatton*, 60 Ind. 12.

The case of *Wells v. Ala. Great So. R. R. Co.*, 6 So. Rep. 737, was a suit by a passenger against a railroad company, for not putting her off at the station she desired to go to. Among other things, the court said: "Before embarking, she applied to the ticket-agent to purchase a ticket to Russell's, and was refused. Not content with one refusal, application was made the second time, and was again refused. Surely these facts afford no support to the theory of a special contract. On the contrary, they afford convincing proof that there was no such contract, and, further, that appellant, as a reasonable being, was thereby warned that the taking of the train for Russell's would be at her own peril."

Railroads have the undoubted power to prescribe rules for the running of their trains. They not only have the power, but their highest duty demands that they exercise it. On this depend the safety of passengers, the safety of trains, and the preservation of vast property interests. The immense power and capacity of railroads for evil, as well as for good, render it of supreme importance that regulations be observed, and that trains run strictly on schedule time, and according to schedule requirements. The horrible railroad collisions and disasters, which fill the news columns, are a tremendous warning against violation or disregard of orders by employés having charge of trains. Conductors of railroad trains are but agents, authorized, and only authorized, to run their trains according to prescribed rules; and if it were necessary to the decision of this case, there are many decisions which hold that persons dealing with them are bound to take notice, or inquire and inform themselves, of the extent of their powers. Such is the general rule, when one deals with an agent, not of the class called general agents.—*Cummins v. Beaumont*, 68 Ala. 204; *Herring v. Skaggs*, 62 Ala. 180.

But we need not go that far in this case. We feel bound to hold that Mrs. Carmichael had notice that it was against the regulations of the railroad company for that train to stop, either at Jonesboro or Bessemer, whichever place she named as her destination, either to take on, or put off a passenger. So, she was not only not deceived in the premises, but it was at her instance that the conductor agreed to violate orders, and to stop and put her off at a place at which the regulations did not allow him to stop for such purpose. It needs scarcely be said, that when one dealing with an agent, knowingly induces such agent to transcend his authority, he can maintain no action against the principal for a breach of an agreement thus entered into by the agent in excess of his authority. The principle goes farther. When one deals with an agent in

[Kansas City, Memphis & Birmingham R. R. Co. v. Smith.]

known excess of the latter's authority, he takes the risk of ratification by the principal, and can not even maintain an action against the agent for a breach of the contract so made in the name of the principal. The reason is, that he is not, in such case, deceived by any assumed authority of the agent. *Aspinwall v. Torrence*, 1 Lansing, 381, 386; Story Agency, § 365; 1 Wait's Act. & Def. 258.

Applying the principles settled above to the rulings in this case, we hold that the City Court erred in the first, third and fourth paragraphs of the general charge, as shown in the bill of exceptions. The charge asked by plaintiff was improper under the testimony in this case. Of the charges asked by defendant, the court should have given the first, third, sixth and tenth. Charges two and seven were properly refused, and charges four and nine have no field of operation, under the rules we have declared.

Reversed and remanded.

| 90 | 25 |
| 89 | 139 |
| 92 | 60 |
| 92 | 276 |

| 90 | 25 |
| 94 | 638 |
| 90 | 25 |
| 95 | 404 |
| 90 | 25 |
| 143 | 43 |

