No. 16,100.

## White *v.* The·Evansville & Terre Haute Railroad Company.

Railroad.—*Passenger.*—*Expulsion from Train.*—*Action for Damages.*—*Complaint.*—*Necessary Allegations.*—*Theory of Complaint.*—A complaint against a railroad company, for a wrongful expulsion from one of its trains by the company's employes, is bad if it proceeds upon the theory that unnecessary force and violence were used in effecting such expulsion, unless it affirmatively shows by a statement of facts that the force employed was unnecessary, epithets alone not being sufficient to overcome the presumption that the conductor did a lawful act; and the complaint is equally defective if it proceeds upon the theory of an invasion of the plaintiff's right as a passenger, when it does not affirmatively show by a statement of facts, that the plaintiff complied with the reasonable regulations of the company; that the conductor did a wrongful act; that the rules and regulations of the company allowed the train from which he was expelled to carry passengers, and to stop at the station for which he had taken passage.

Same.—*Rules and Regulations of the Company.*—*Agreements or Statements in Violation of by Ticket Agent or Conductor.*—A statement or agreement of a ticket agent or a conductor, in contravention of the rules and regulations of the company, that a train shall stop at a certain station, can not bind the company.

From the Sullivan Circuit Court.

*W. C. Hultz*, for appellant.

*J. E. Iglehart, E. Taylor, J. T. Hays* and *H. J. Hays*, for appellee.

McCabe, J.—This was a suit by the appellant, against the appellee, for a wrongful expulsion from the appellee's train. The Circuit Court sustained a demurrer to the complaint, and the appellee had judgment on demurrer. The ruling on the demurrer is the only error assigned here.

The substance of the complaint is, " that the appellee is a corporation organized under the laws of this State; that it owned and operated a line of railroad from Evansville to

Terre Haute in this State, passing through the towns of Sullivan and Farmersburg, in Sullivan county, at which towns appellee owned and maintained a station depot for the use of the general public, who desired to take passage and leave trains upon defendant's said line of railroad, and that appellee was then and there a common carrier of passengers and freight for hire; that on the 5th day of January, 1891, the appellee was the owner and operator of a certain train of cars over said line of railroad, which arrived from the south, at said town of Sullivan at about 2 o'clock P. M., each day, and at the said town of Farmersburg at about — P. M. each day, except Sunday; that for two years immediately prior and up to said 5th day of January, 1891, appellee had habitually carried passengers and freight upon said train of cars for hire, from said town of Sullivan to said town of Farmersburg, which facts appellant well knew; that on said day the appellant bought of the appellee, through its depot agent, a round-trip ticket from the town of Sullivan to said Farmersburg, and said ticket agent told and directed appellant that he could take passage upon said train of cars; that appellant, with other passengers, entered the hind car, or caboose, of said train— in which appellee had habitually carried passengers, as aforesaid—under the direction of appellee's said ticket agent * * *, in good faith, to take passage upon said train to said town of Farmersburg, and without any knowledge that the appellee would not carry passengers upon said train of cars on said day; that the appellee had no written notice of any kind or character posted up at its depot at said town of Sullivan, stating upon what train or trains passengers would or would not be carried, had given no public notice, or in any way notified the public or the appellant, that passengers would not be carried upon said train of cars; * * * that after the appellant had entered said car with others, and had taken his seat as a passenger in good faith,

* * *    and after said train had started to move slowly, appellee's agents and servants, to wit, the conductor and brakeman, wrongfully and negligently assaulted the appellant, and ejected him from said car, and refused to allow the appellant to take passage upon said train of cars to said town of Farmersburg, all of which was done without any fault or negligence of the appellant."

There are many other allegations in the complaint, but they relate to matters occurring after the appellant was ejected from the train, affecting only the measure of damages. It is insisted by the appellant that the theory upon which this complaint is constructed is that the appellant was rightfully in the car as a passenger, entitled to be carried from Sullivan to Farmersburg, and that, in violation of his rights as such passenger, he was wrongfully ejected from said train; while the appellee contends, as we understand the brief, that the complaint is constructed upon the theory that the gist of the action is that unnecessary force and violence was used in ejecting him from the train. The complaint contains some features tending to each of these theories. However, taken altogether, we think the complaint proceeds upon the theory contended for by the appellant, namely, that the injury sought to be redressed is a wrongful expulsion of the appellant from the appellee's train, in violation of the appellant's rights as a passenger entitled to be carried to his destination by the appellee as a common carrier; and the sufficiency of the complaint must be tested upon that theory. Tested upon the other theory, there would be no question but that the complaint would be fatally defective.

The case of *Chicago, etc., R. R. Co.* v. *Bills*, 104 Ind. 13, was very much like this in many respects. It was there said by this court, that "We have no doubt that the law is, that if a conductor uses unnecessary force in ejecting a passenger, the company is liable, although the conductor may have a right to eject him and to employ reasonable force to expel him from the train. * * *

While it is true that a conductor may not use unnecessary force to eject a passenger, it is also true that he may employ reasonable force to accomplish that object. The degree of force is not determined simply by results, for other facts must be taken into consideration, and chief among such facts is the resistance made by the passenger. It is obvious that a passenger who makes no resistance can not lawfully be treated like one who does resist the commands and efforts of the conductor. Resistance may make great force necessary and reasonable; while acquiescence in the directions of the conductor may render any degree of force unnecessary and unreasonable. If words will accomplish the object, force should not be employed. The use of unnecessary force is unlawful. He who constructs a complaint upon the theory that unnecessary force was used in expelling a passenger from a railroad train, proceeds upon the ground that an unlawful act was committed. One who bases his cause of action upon the performance of an unlawful act, must affirmatively show it to be unlawful. The appellee does base his cause of action upon the performance of an unlawful act, and it therefore devolves upon him to show that it was unlawful. Acts can not be shown to be unlawful by epithets; facts alone can have this effect. The result of these principles is that this complaint can not be good upon the theory assumed by the appellee, unless it states such facts as show that the act of the appellee's conductor was unlawful. In order to show that the act was unlawful, it is essential to state facts showing that unnecessary force was employed in ejecting the appellee from the train. In our opinion no such facts are stated. These are the averments of the complaint upon this point: 'That the conductor stopped the train and put the plaintiff off the train, beside the road, about one mile from Elwood. And the plaintiff further alleges that he is so afflicted with a disease called hernia that he is compelled to wear a truss, and that, in putting him off the train, the conductor used so

much force and violence that he broke his truss and rendered it entirely useless; and the conductor also threw him violently to the ground, and greatly bruised and wounded him.' These allegations do show that force was· used, but they are far from showing that it was unnecessary. For anything that appears, the conductor may have used the least possible degree of force necessary to ‸expel the appellee from the train. It may be that the resistance of the appellee made necessary all the force that the conductor used. We can not presume that the conductor did an unlawful thing; on the contrary, the presumption is that his act was lawful."

We, therefore, conclude that the complaint in the case at bar was bad, treating it as proceeding upon the theory that the gist of the action was for unnecessary force and· violence in the alleged expulsion from the train.

We think the complaint, upon the theory that it seeks redress for an invasion of appellant's rights as a passenger, by his wrongful expulsion from the appellee's train, is equally defective. The reasoning of the case from which we have just quoted ‚fully justifies this conclusion. The act of expelling a person from a railroad train, by means of needless force and violence, is no more unlawful than the expulsion of one without force and violence, who is rightfully on the train, and entitled to be carried as a passenger. It, therefore, follows that a complaint constructed on the latter theory should, by its averment of facts, overcome the presumption in favor of the legality of the conductor's acts. That is, every fact should be stated necessary to put the conductor in the wrong. This is so, because a person may be rightfully on a train of a common carrier and be rightfully expelled therefrom for a failure to comply with the reasonable rules and regulations of the carrier. We deem it unnecessary to decide whether the complaint sufficiently shows that the train in question was one upon which the public had a right to demand to be carried at all,

inasmuch as we think the complaint bad, even though appellee was bound to carry passengers on that train, between such stations on its road, as, by its rules and regulations, said train was required to stop at. One regulation is so universal with all railroad companies that the courts must take cognizance of it, and that is the payment of fare; because compensation is as much a duty imposed by the law on the passenger as the duty on the carrier to carry him. Indeed, compensation is a condition precedent to his right to demand of the carrier to be transported. This is sometimes done by the purchase of a ticket, and sometimes by direct payment to the conductor. The purchase of a ticket alone, however, is not sufficient to entitle its holder to be carried as a passenger. The conductor, or those whose duty it is to collect fare and tickets from the passengers, may never know that the passenger in question holds a ticket entitling him to ride; and, if he did, the company would be in no better condition than if he had never bought it, if he fails to surrender his ticket to the company's agent, at the proper time. He may ride on it again, and a half dozen or more others may use it for the same purpose if he retains it. He may lose his ticket, yet the fact that he paid for the ticket the full amount of fare to the company's agent will not entitle him to transportation, because the ticket, until it is surrendered, is not the property of the company, but is the property of the purchaser until he has transferred that property, and the holder thereof can demand passage upon it until its surrender to the carrier. Therefore, it is settled law that the holder of such a ticket is not entitled to be carried unless he surrenders or offers to surrender the same, at the proper time. If he make no such tender, the ticket affords him no protection against expulsion. Hutchinson on Carriers, 2d ed., sections 572, 573; Wheeler on Modern Law of Carriers, p. 141.

For a failure to tender his ticket or to pay the usual fare,

a person may be lawfully expelled from a train. Hutchinson on Carriers, 2d ed., sections 567a, 567b and 569 ; 19 Am. and Eng. Ency. of Law, pp. 904, 905. We find no allegation in the complaint concerning payment or tender of fare, save the allegation of the purchase of a ticket; and we find no allegation therein that such ticket was either exhibited or tendered to the conductor. For aught that appears the appellant may have been expelled for a failure to exhibit or surrender the ticket to the conductor.

The doctrine announced in the case from which we have quoted, and which we again approve and apply to this case, is that the law will not presume that the conductor did an unlawful act, but will presume that his acts were lawful, until the contrary is made to appear affirmatively by suitable allegations. It follows that the complaint, upon the theory most favorable to the appellant, is insufficient for failure to allege that the appellant surrendered, or offered to surrender, to the conductor his ticket, or that he tendered the usual fare. Unless he did one or the other of these acts, he was liable to a rightful expulsion from the train.

But there is still another reason why the complaint was bad on appellant's own theory, and that is that there is no allegation in it that by the rules of the company the train in question was allowed to stop at the station named on his ticket, or that it was allowed to stop at Farmersburg, his destination. The case of *Chicago, etc., R. R. Co.* v. *Bills, supra,* from which we have quoted, was an action very much like this, for a supposed wrongful ejection of the plaintiff from the defendant's train. The complaint in that case was held bad on both theories discussed in this opinion, and on the theory of wrongful expulsion of one rightfully on the train, as contra-distinguished from the theory of a wrongful expulsion by means of needless force and violence to one wrongfully on the train, this court said in that case, that, "As it is incumbent upon the plaintiff in an action of this kind to show that he was rightfully on

the train from which he was removed, it is necessary for him to aver in his complaint, that the rules of the company provided that the train on which he took passage should stop at the station named on his ticket."

Upon this authority we hold that it was necessary to allege that the train on which the appellant attempted to take passage was one that, by the rules and regulations of the company, was allowed to stop at Farmersburg.    This defect in the complaint is not cured by the allegations therein that "the ticket agent told and directed the appellant that he could take passage on said train of cars."    We need not determine what the remedy of a person would be who purchases a ticket for a particular station on a railroad for a particular train, in ignorance of the rules of the company that such train is not allowed to stop at such station, and the ticket agent at the same time misinforming him that the rules of the company do allow the train to stop at such station, by which he is injured.    That is not the case presented by the complaint.    It is simply a statement and direction of the ticket agent, that the "appellant could take passage on said train," and no intimation as to what the rules of the company provided, as to whether that train was allowed to stop or not at Farmersburg.    He should have inquired what the rules were in that respect, and then he would have known whether to rely on the ticket agent's statement or not.    Had the ticket agent told him that the rules forbid the stopping of the train at such station, and yet directed him to take passage on it, he would have done so at his own peril, because it has been held by this court that a ticket agent or a conductor can not bind the company by an agreement or statement that a train shall stop at a station whereat such stop is forbidden by the rules of the company.    *Pittsburgh, etc., R. W. Co.* v. *Nuzum,* 50 Ind. 141 ; *Ohio, etc., R. W. Co.* v. *Hatton,* 60 Ind. 12.

We therefore conclude that the complaint did not state facts sufficient to constitute a cause of action against the

,appellee, and that the Circuit Court correctly sustained. the demurrer thereto.

The judgment is affirmed, with costs.

Filed January 31. 1893.