CASE 86.—ACTION BY R. S. TURNER AGAINST THE LOUIS-
VILLE & NASHVILLE RAILROAD COMPANY.—
March 18, 1910.

# L. & N. R. R. Co. v. Turner

Appeal from Whitley Circuit Court.

W. T. Davis, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Re-
versed.

1.  Carriers—Carriage of Passengers—Performance of Duties.—A
    carrier maintaining water-closets on its trains and at a sta-
    tion performs its duty in that respect at that station, and it
    need not anticipate that a passenger will jump from a train
    at dark and wander about the premises at the station to a
    place not ordinarily used by passengers for the purpose of
    responding to a call of nature.

2.  Carriers — Regulations of Trains — Reasonableness.—A rule
    prohibiting the opening of water-closets on trains at stations
    is reasonable.

3   Carriers—Passengers—Depot Premises.—Where there is a
    customary use by passengers of depot premises in going to
    and from trains, the carrier must protect passengers from
    pitfalls near to the pathways by lights or barriers.

4.  Carriers—Passengers—Depot Premises.—A passenger while
    waiting for the departure of the train at night found it neces-
    sary to respond to a call of nature and found the closet on
    the train closed. The conductor refused to open it, and in-
    formed the passenger that the train left in six minutes, and
    on the statement of the passenger that he did not have time
    to hunt up a closet, and that he did not want to miss the
    train, the conductor told him to jump from the train anywhere
    in the dark. The passenger alighted and went about 25 feet
    from the train and fell into an unguarded culvert. The
    carrier maintained a closet at the station. It was not neces-
    sary or customary for passengers to use the depot grounds
    where the culvert was located. Held, that the carrier was

not liable for the injuries, since the direction of the conductor was not an implied assurance that the passenger would find the premises safe.

J. W. ALCORN, H. H. TYE, CHAS. H. MOORMAN and BENJAMIN D. WARFIELD for appellant.

SAM C. HARDIN, C. C. WILLIAMS and J. N. SHARP for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this action R. S. Turner sued the appellant, Louisville & Nashville Railroad Company, for damages for personal injuries. He recovered a judgment for $4,000, and the railroad company appeals. Various grounds for reversal are urged, but in view of the conclusion of the court, we deem it necessary to consider but the single question whether or not a peremptory instruction should have gone in favor of appellant. The accident occurred in Corbin, Whitley county, Ky. Appellee was a traveling man at the time, and Corbin was situated in the territory assigned to him. He had frequently been to Corbin before. The accident occurred on May 23, 1906, under the following circumstances: Appellee was stopping at one of the hotels in Corbin, and notified the proprietor that he desired to take the train which left for Jellico some time between 2 and 3 o'clock. He was awakened about 25 minutes before the train was due. He reached the station about 15 minutes before the train was scheduled to depart. While waiting for the departure of the train, appellee found it necessary to respond to a call of nature. For that purpose he left the ladies' car and went to the smoker. He tried the door, but found it locked. When he returned to the platform he met

the conductor, and asked the latter to let him get into the closet. The conductor walked to the closet and took hold of the knob. He then said, "The closet is locked; I can't let you in." Appellee replied that it was a case of necessity, and that he did not have time to hunt up a closet. The conductor looked at his watch, and said, "You have got six minutes." Appellee said, "I can't make it, then;" that is, that he did not have time to go to any closet off the train. The conductor said, "Well, I can't let you in." Appellee responded, "Well, I don't want to get left; I can't afford to get left here." Whereupon the conductor said, "Just jump down there anywhere in the dark." When this conversation took place the conductor was standing on the platform of the smoker, while appellee was standing on the platform of the ladies' car. On being told by the conductor to jump down anywhere in the dark, appellee got off the platform by the side of the coach. There was at least one light in the coach at the time, and probably two or three. Appellee passed on up along side of the coach, as he claims, for the purpose of reaching a dark place. When he got to where the Pullman car was located he started to sit down. Being afraid that the police would see him, he concluded to move further away. He then went to a point, as he says, about 20 or 25 feet distant from the sleeper. At this point he stooped down. Finding that he was in an uncomfortable position, he moved back a step further, and fell into an open culvert. The distance of the culvert from the track on which the sleeper was standing is variously estimated at from 7 to 25 feet. At the time of the accident there was no light at the culvert; nor was there any fence or railing to prevent a person from

falling into it. Appellee was badly injured by the fall. His ankle was broken and split. After the accident he was carried back to the hotel, and went to Knoxville the following morning. Several operations were performed upon him, and finally his leg was amputated. The evidence further shows that appellant maintained a water-closet at the station which was located about 75 yards from the station. It was further shown that the closet was from 75 to 150 feet from the point where appellee had his conversation with the conductor. It was also shown that the hotel water-closet was located about 30 yards from the station. Appellee bases his right to recover on the fact that appellant left the culvert open and uncovered, and that its depot grounds were not lighted. It may be conceded that it is the duty of a railroad company to keep its stations, platforms, and approaches thereto, and also those portions of the depot grounds ordinarily used by passengers, in a reasonably safe condition, and to have them reasonably lighted at night. In the case before us there was no proof that it was necessary for passengers to use that portion of the depot grounds near the culvert; nor was there any proof of its customary use by passengers. Furthermore, the railroad company had fulfilled its whole duty when it provided water-closets on the trains and a water-closet at the station. The rule prohibiting the opening of water-closets on trains at stations is a reasonable one. Were it otherwise, the use of such closets while the trains are stopping at stations, by passengers on the various trains, would soon result in a nuisance. It will be observed that the conductor did not direct appellee to jump down anywhere in the dark until after appellee claimed that he did not have time to

go to any closet and did not want to get left. Then, taking appellee at his word, the conductor simply told him to jump down anywhere in the dark. Even if this was an implied assurance on the part of the conductor of the safety of the place to which he directed appellee to go, and he had authority to bind the company by such assurance, it is manifest from the language used that the conductor meant for the appellee to jump down by the side of the car upon which he was standing. It was only an implied assurance of the safety of the place to which he directed him to go; it was not an implied assurance that every portion of the depot grounds, whether ordinarily used by passengers or not, was reasonably safe for appellee's purposes. Appellee was not authorized by the direction of the conductor to wander here and there about the depot grounds until he found a place that was altogether suitable for his purposes and satisfactory to himself. He chose to go to a place where it is not shown that any other passengers had gone for like or other purposes. It was not a place where the carrier could anticipate that a passenger would naturally or ordinarily be likely to go.

The case of Southern Railway Company in Ky. v. Goddard, 121 Ky. 567, 89 S. W. 675, 28 Ky. Law Rep. 523, does not support appellee's position. In that case the carrier could have anticipated that a shipper would have occasion to go into its yards for the purpose of loading stock. This court, therefore, held that if a ditch is maintained on the premises by the carrier, about or near which a shipper, without knowledge of its presence, would have occasion to go in loading his stock on the cars at night, and by reason of the darkness he falls therein and is injured, the carrier should be held liable to him in

damages if guilty of negligence in failing to guard the ditch with a barrier or other contrivance to prevent persons from falling therein.

Nor do the facts of this case bring it within the rule announced in McKone v. Mich. Cent. R. Co., 51 Mich. 601, 17 N. W. 74, 47 Am. Rep. 596. In that case, McKone, being urged by a call of nature, passed some little distance along the sidewalk, away from the place for passengers to alight. In order to seclude himself from observation and avoid indecent exposure, he stepped from four to eight feet on the railroad's grounds, fell into a deep hole and received injury. The evidence showed that a passage house and privy accommodations had been destroyed by fire. No privy accommodations remained. The spot where plaintiff received his injury had been leveled off and graveled, and left open for use. The company offered it for the use of its patrons, and the grounds were habitually used for all the purposes which are usual in such places. The hole in which plaintiff fell was so situated that those frequenting the place were in danger of getting into it. The same is true of Cross v. Lake Shore & M. S. R. Co., 69 Mich. 363, 37 N. W. 361, 13 Am. St. Rep. 399. There the plaintiff fell into a culvert hole near a diagonal path. The hole was not guarded, nor its presence indicated by any light or other signal. The evidence showed that the diagonal way plaintiff was using when he fell into the hole in question was a public and common way to the knowledge of the railroad company for a considerable length of time. Having become one of the ways recognized by the company and its agents to go to and from the depot, it became their duty to keep it reasonably safe to go and come upon, the same as they would a route which they had actually provided.

We deem it unnecessary to discuss the other cases cited by appellee, but suffice it to say that they all recognize the rule in force everywhere, that where there is a customary use by passengers of the depot premises, with the knowledge or acquiescence of the company, in going to and from trains, it is the duty of the company to protect passengers from pitfalls near to such pathway by lights or sufficient barriers. No such case is here presented.    There is some evidence to the effect that a passenger might go near the culvert in question for the purpose of reaching the water-closet.    The question, however, must not be determined by what passengers might do.    It is the ordinary, natural, and customary use of the portion of the railroad premises other than the depot and the approaches thereto that imposes a liability upon the carrier of passengers to keep such portions of the premises in a reasonably safe condition for the use of passengers.    As the railroad company provided water-closets on its trains and also a water-closet reasonably accessible to the station, it could not have anticipated that a passenger, in response to the direction of the conductor to jump down anywhere in the dark, would wander about the premises to a place not ordinarily used by passengers for the purpose of responding to a call of nature.    Nor, as said before, was the direction of the conductor an implied assurance that appellee, wherever he might go, would find the premises reasonably safe for his purposes.

For the reasons given, we conclude that the court should have granted the peremptory instruction asked for by appellant.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

NUNN, J., dissenting.