## Cumberland Railroad Company v. Hemphill.

(Decided April 18, 1916.)

### Appeal from Knox Circuit Court.

1. **Carriers—Carriage of Passengers.**—It is the duty of a carrier to provide for its passengers a reasonably safe platform and approaches to its trains, and if it fails in this duty and by reason thereof a passenger is injured, it is liable in damages.

2. **Carriers—Carriage of Passengers.**—Injury to Passenger—Proximate Cause—Peremptory Instruction.—In an action by a passenger to recover of the carrier for injuries alleged to have been caused by the failure of the carrier to provide a reasonably safe platform and approaches to its trains, the evidence shows that the carrier maintained a cinder fill and platform opposite to a wooden platform and store. Plaintiff, who was perfectly familiar with the physical conditions, walked along the cinder platform with his wife for the purpose of boarding one of defendant's trains. After assisting his wife to board the train he says that he then turned around and "creeled" his foot in some way and rolled down the embankment. Held, that the "creeling" of his foot and not the narrowness nor unguarded nor unlighted condition of the cinder platform was the proximate cause of his injuries, and, having failed to show that the "creeling" of his foot was due to any negligence of the company, he is not entitled to recover.

BLACK, BLACK & OWENS for appellant.

GOLDEN & LAY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER.—Reversing.

In this action for damages for personal injuries, plaintiff, John W. Hemphill, recovered of the defendant, Cumberland Railroad Company, a verdict and judgment for $500.00. The company appeals.

The facts are as follows: The company operates a line of railroad extending from Artemus to Wheeler, in Knox county, a distance of about ten miles. At Wheeler, the southern terminus of the road, the Brush Creek Coal and Manufacturing Company operates a coal mine. Its store building is located within a few feet of the railroad track. In front of the building is a wooden platform six or eight feet wide and running parallel with the track for about thirty-five feet. Between the wooden platform and the track is a dirt and cinder fill. No depot building is maintained at Artemus, but the passengers pay cash fare for their transportation. The company's trains stop opposite the platform and fill. Plaintiff was employed in the coal company's store. A few days before the accident he had been notified that the coal company contemplated reducing its store force and that he would probably be one of the men who would be laid off. On the evening of January 24th, 1914, plaintiff and his wife, who was partially blind, left the store building and went across the platform and along the cinder fill for the purpose of taking passage on defendant's evening train. The car steps were near the end of the fill and platform. After certain passengers had alighted, those intending to board the train walked up the steps and entered the cars. Among those who boarded the train was plaintiff's wife. After she, with the conductor's help, had boarded the train, plaintiff says that before he started to pull upon the train he stepped around and, in doing so, "creeled his foot in some way" and fell down the embankment a distance of five or six feet. He claims that his hands and arm were badly hurt and that his back was wrenched and had been hurting him ever since. Because of the pain in his back he had hardly been able to rest either during the day or the night since he had gotten hurt. At the time of the accident he weighed about two hundred pounds and was sixty-four years of age. In going from the store to the train and at the time of the injury he carried a lantern. The conductor also had a lantern. There was no railing around the embankment and no light was maintained by the company. After the injury plaintiff was picked up and boarded the train. He and his wife

visited his son-in-law until Monday morning, when he returned to the store, where he worked for the coal company until February 1st when he was laid off, not because of his physical condition but because the company had determined to reduce its force. He never consulted any physician in regard to his injuries, although the coal company's physician was related to his wife and plaintiff contributed 50 cents per month towards the physician's compensation. Some six or seven years before the accident plaintiff had walked off his porch and injured his ankle. It was also shown that he applied to the railroad company for work and wanted an easy job. At the same time he complained of the same physical disability that he claims resulted from his fall. On cross-examination plaintiff admitted that he was acquainted with the physical conditions surrounding the store and railroad track. He also stated that up to the time he turned around and his foot "creeled" he had not been injured in any way. On re-direct examination plaintiff stated that the only thing he did for his injuries was to rub some liniment on his back. He also stated that he talked to Doctor Logan two or three times about it but that Doctor Logan had gone away.

It is, of course, the duty of a carrier to provide for its passengers a reasonably safe platform and approaches to its trains, and if it fails in this duty and by reason thereof a passenger is injured, it is liable in damages. Louisville, etc. R. Co. v. Payne, 133 Ky. 539; 118 S. W. 352, 19 Ann. Cas. 294; Louisville, etc. R. Co. v. Turner, 137 Ky. 730, 126 S. W. 372, 136 A. S. R. 317; Illinois Central R. Co. v. Cruse, 123 Ky. 463, 96 S. W. 821, 13 Ann. Cas. 593, 8 L. R. A. (N. S.) 299, 4 R. C. L., page 1226, section 648. In order to recover, however, it must be shown that such failure was the proximate cause of the injury. This is not a case where the passenger was ignorant of the conditions and walked off the platform because it was too narrow, or was unguarded or unlighted. The platform was right in front of the store where plaintiff had been working for some time. He had frequently used the platform and was perfectly familiar with its condition. At the time of the accident he himself carried a lantern. He and his wife, who was partially blind, walked along the platform and had no difficulty in reaching the steps of the car. He and the conductor assisted his wife in boarding the train. He then says that he started to

.pull upon the train, but before he did so he stepped around and "creeled" his foot in some way and fell. He admits that up to this time he had not been injured. He does not explain how his foot happened to "creel." He does not show that the "creeling" was due to any defect in the platform. For aught that appears in the record, plaintiff's fall was due entirely to the fact that his foot "creeled," and no one can say that his injuries were not due to the fall but to the fact that he rolled down the embankment. Neither the presence of electric lights nor of barriers would have prevented the fall. He would simply have fallen against the barriers instead of rolling down the embankment. Under the circumstances, it cannot be said that plaintiff's injuries were due to the narrow, or unguarded or unlighted condition of the platform. On the contrary, his own evidence shows that the "creeling" of his foot, which alone caused him to fall, was the proximate cause of his injuries, and, having failed to show that the "creeling" of his foot was due to any negligence on the part of the company, we conclude that he is not entitled to recover. It follows that the trial court should have directed a verdict in favor of defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.