CASE 24.—ACTION BY JOHN M. SAULSBERRY AGAINST THE CHESAPEAKE & OHIO RY. CO. FOR DAMAGES FOR DELAY IN SHIPPING CORN.—June 18.

## Chesapeake & Ohio Ry. Co. v. Saulsbury

Appeal from Carter Circuit Court.

S. G. KINNER, Circuit Judge.

Judgment for plaintiff, defendant appeals — Affirmed.

1.  Carriers—Carriage of Goods—Delay in Transportation.—A delay of a month in the transportation of freight a distance of thirty-three miles is unreasonable, and the carrier is liable for the damages sustained.

2.  Same—Remedy of Shipper—Right to Refuse Goods.—A shipper is not justified because of unreasonable delay in the transportation of his goods to refuse to receive them from the carrier.

3.  Same—Right of Carrier.—Where a shipper refuses to receive the goods transported because of delay in the transportation, and the refusal of the carrier to make any concession on account thereof, the carrier has no right to convert the freight to its own use or to dispose of it contrary to law.

4.  Under Ky. Stats., 1903, Sec. 785, authorizing a carrier having unclaimed freight not perishable in its possession for one year to sell the same at public auction, on giving notice to the consignor and consignee, etc., and to sell perishable freight as soon as it deems a sale necessary, on giving similar notice thereof, and to retain out of the proceeds the expenses of transportation, storage, advertisements, sale, etc., a carrier having in its possession as unclaimed freight corn delivered to it for transportation must, as soon as it is deemed neces-

sary to sell the same, sell it as perishable freight, and give notice thereof, and may, if necessary to sell it at some other place for want of market, transport the same to such place, but the sale must be made in the State, and the carrier taking the freight to another State and there selling it converts it.

E. R. WILHOIT and JOHN T. SHELBY for appellants.

THEOBALD & THEOBALD for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

On August 19, 1903, J. M. Saulsberry bought a car load of corn at Marion, Indiana, which was shipped to him at Aden, Kentucky. The first carrier brought the car load of corn to Ashland, and there delivered it to the connecting carrier, the Chesapeake & Ohio Railway Company, about September 1st. Ashland is 33 miles from Aden, but the corn was not brought to Aden until October 2d. In the meantime Saulsberry had made other arrangements for corn at Aden, and had no use for it there, but agreed to take it if the company would deliver it at E. K. Junction, which was eight miles from Aden, and between Aden and Ashland. The company refused to do this. It also refused to make any deduction from the freight on account of the delay in getting the corn to Aden. Saulsberry then declined to pay the freight and take the corn. The corn lay on the side track at Aden until about December 20th, when the company notified Saulsberry that it would sell the corn for its charges. On January 8th the railroad company shipped the corn to Cincinnati, and there sold it for $240, from which it deducted its freight and charges, $127.15, leaving $112.85, which it tendered to Sauls-

berry. He refused to accept the money, and brought this suit against the railroad company for the conversion of the corn. The jury to whom the case was submitted found a verdict for him for the value of the corn, less the amount of the freight charges. The court entered judgment upon the verdict, and the defendant appeals.

The amount of the verdict is not assailed, but it is insisted that the plaintiff was not entitled to recover. The long delay in getting the car load of corn from Ashland to Aden is accounted for by the defendant by the fact that its yards at Ashland were congested, and that it could not sooner move the car out. Manifestly the delay was unreasonable, and the railroad company was liable to Saulsberry for damages, but this did not give him the right to refuse to receive the corn and throw it upon the hands of the railroad company. But, when he did refuse to receive the corn, the railroad company, after its refusal to make any concession to Saulsberry on account of the delay, had no right to convert the corn to its own use or to dispose of it contrary to law. It had a lien on the corn for its freight charges. The rule as to this lien is thus stated in Hutchinson on Carriers: "At common law and without some statutory authority, the carrier, as has been seen, cannot sell the goods for his charges upon them. The lien confers no such right. It consists merely in the right to keep or detain the goods; and, if the consignee or owner refuse to pay for the carriage and take them, the remedy of the carrier is to have them sold under a judicial order or legal process, to be obtained by a proceeding in equity. A sale without some such authority would be a conversion by the carrier, and he would thereby become liable to whatever damage the owner might sustain by the

illegal act, and the purchaser would acquire no title. Where there is a statute authorizing the sale, the sale must be fairly conducted, and held at the time and upon the notice provided by the statute.'' Hutchinson on Carriers, section 494.

The only statute in this State regulating the subject is section 785, Ky. St. 1903: ''Every company that shall have unclaimed freight, not perishable, or unclaimed baggage in its possession, for one year or more, may sell the same at public auction, and out of the proceeds thereof retain the expenses of transportation, storage, advertisement, and sale. Notice of such sale shall be given to the consignor and consignee by letter addressed to each of them, respectively, and mailed to the nearest post-office to the place at which the goods were received, and to which they were carried; and notice of such sale shall also be published for four weeks in some newspaper of general circulation in the State. In case the freight is perishable, it may be sold as soon as it is deemed necessary and proper, and notice of such sale shall be given, if practicable, to the consignor and consignee, as herein directed. A record shall be kept of the articles sold, and the prices obtained therefor, and the surplus, if any, after payment of charges, shall be paid to the owner of such articles, if demanded, at any time within two years from date of sale.'' When Saulsberry declined to receive the corn, it became unclaimed freight, and we think a car load of corn is perishable freight within the meaning of the statute. It was therefore incumbent upon the railroad company, as soon as it was deemed necessary and proper, to make a sale and give notice both to the consignor and consignee, and, as this was practicable, also to publish the notice of the sale for four weeks in some

newspaper of general ·circulation in the State.    What the statute evidently contemplates ordinarily is a sale at the place where the freight is.    But, if it is necessary to sell it at some other place for want of a market or other reason, still the sale must be made in this State and after notice, as provided in the statute.    The statute has no operation outside of the State, and a sale made out of the State or without notice as provided by the statute is void.    The act of the company in taking the car load of corn to Cincinnati and there selling it operated as a conversion of the corn.    On the whole case we see no error to the prejudice of the substantial rights of appellant.

Judgment affirmed.