[Civ. No. 3235.   Third Appellate District.—April 15, 1927.]

## J. W. BROWNING, Appellant, v. RIVER FARMS COMPANY OF CALIFORNIA (a Corporation), Respondent.

[1] WAREHOUSEMEN — RESACKING OF GRAIN — CHARGE AGAINST DEPOSITOR—CONTRACT—EVIDENCE.—In this action to recover a sum of money paid to defendant on account of warehouse charges made for and on account of resacking and reconditioning certain lots of grain deposited by plaintiff with defendant, and kept by defendant in a warehouse belonging to it, in view of the evidence showing that the receipts issued by defendant provided for the payment by plaintiff of the necessary charges for resacking, that said receipts were accepted and held by plaintiff for nearly four years, and that the resacking of the grain became necessary without any failure on the part of defendant, the trial court was justified in concluding that it was within the understanding of the parties that the costs and expenses of resacking the grain necessary for its preservation should be borne by plaintiff.

[2] ID.—OBLIGATIONS OF DEPOSITOR.—Section 1856 of the Civil Code rests upon the depositor of goods the obligation to pay for storage charges and for advances and insurance incurred at his request and, also, the obligation to pay such charges as the depositary or warehouseman necessarily incurs in and about the care, preservation, and keeping of the property stored.

[3] ID. — STORED WHEAT — PERISHABLE PROPERTY — REMEDIES OF DEPOSITARY.—Stored wheat is not perishable property, within the meaning of that term as used in section 34 of the Warehouse Act (Stats. 1909, p. 437, amended 1919, p. 398, and 1923, p. 276), and it is not rendered so by reason of the fact that it is placed in perishable containers or sacks; and the remedy of the warehouseman for necessary resacking of stored wheat is not limited to that provided for under said section of the act, i. e., to proceed to sell same, but, under section 35 of said act, he may resort to other remedies allowed by law.

(1) 40 Cyc., p. 450, n. 25.   (2) 40 Cyc., p. 454, n. 63.   (3) 40 Cyc., p. 451, n. 31.

APPEAL from a judgment of the Superior Court of Colusa County.   Ernest Weyand, Judge.   Affirmed.

2.   See 25 Cal. Jur. 970.

The facts are stated in the opinion of the court.

Seth Millington for Appellant.

Hiram W. Johnson, Jr., and Carl E. Day for Respondent.

PLUMMER, J.—Action by plaintiff to recover the sum of $534.90 paid to the defendant on account of warehouse charges alleged to have been unlawfully made by the defendant for and on account of resacking and reconditioning certain lots of grain deposited by the plaintiff with the defendant, and kept by the defendant in a warehouse belonging to it, situate in the county of Yolo. The defendant had judgment and the plaintiff appeals.

The record shows that in July, 1921, the plaintiff stored in the defendant's warehouse 1,782 sacks of wheat, and in July, 1922, stored certain other sacks of wheat to the number of 1,424, making an aggregate 4,932 sacks of wheat stored by the plaintiff in defendant's warehouse.

The wheat remained in the defendant's warehouse until the latter part of May, 1925; that is, a part of the grain remained stored approximately three years and the portion stored in 1921 remained approximately four years.

In the summer of 1923, two years after the storage of grain in 1921 and about one year after the storage of grain in 1922, many of the sacks broke and the piles fell down and a considerable quantity of the wheat spilled out over the floor and driveway of the warehouse; that the defendant, as claimed by it, for the purpose of protecting said grain from wastage, resacked a portion of said wheat, furnishing new sacks where necessary and sewing up old ones and repiled the wheat where necessary. The present action involves charges for reconditioning and resacking the stored wheat during the years 1923 and 1924, aggregating the sum of $534.90. These charges were made by defendant for labor charges and the cost of furnishing sacks. The trial court found, upon what we think is sufficient testimony, that, in order to preserve the wheat from wastage, resacking and repiling were necessary.

Even though resacking and reconditioning for the purpose of preserving the stored grain were necessary, the appellant contends that the defendant had no right to resack

the wheat during the years 1923 and 1924 without express authorization on the part of the plaintiff. It is further contended that the defendant's only remedy was to notify the plaintiff and then sell the wheat, if it were not removed, on the theory that the stored grain was perishable property, as defined by section 34 of the Warehouse Act of the state of California (Stats. 1909, p. 443). The court found the storing of the wheat, as we have above stated, that the defendant issued warehouse receipts therefor, that the receipts upon their face provided that all resacking charges should be paid by the owner, that the printed and approved tariffs allowed to be charged by the defendant by the Railroad Commission of the state of California were on file with the Railroad Commission and posted in said warehouse of the defendant, that at the time of the acceptance of the wheat by the defendant it was contained in good storage grain bags, that said wheat was allowed to remain by the plaintiff in ·the warehouse building of the defendant from the time it was stored, partly in 1921 and partly in 1922, until the latter part of May, 1925, that during the summer of 1923, many of the sacks in which said wheat was contained broke and the piles fell down and the wheat spilled out over the floor of the defendant's warehouse, that the wheat was stored in sacks and not in bulk, and that in order to preserve said wheat from wastage, it was necessary to resack the wheat, repair the grain sacks where possible and repile the same, and that the work·and labor performed by the defendant and the materials furnished were necessary for the preservation of the stored wheat; that in 1924 it became necessary to resack a further portion of said wheat; that all the work and labor performed by the defendant and materials furnished in order to preserve said wheat and prevent damage to other grain stored in defendant's warehouse was in the exercise of reasonable care in regard to said wheat; that the work which became necessary to protect said wheat from wastage was not on account of any failure of the defendant to use or exercise proper care in the preservation thereof; that it was due to the extreme length of time in which said wheat was permitted to remain on storage. The record shows that it is unusual for grain to remain stored in warehouses until the receipt of grain from crops of ensuing years; that the usual course is for all

the grain to be removed from a warehouse before a new crop comes in, and in most instances the grain is removed before taxes may become assessable thereon in the following month of March.

[1] As stated herein, all the receipts issued by the defendant governing the several lots of grain contained upon the face thereof this statement: "All storage and resacking charges must be paid before delivery of grain," etc.

The necessity for the resacking of the grain having been found by the court and also that such resacking became necessary without failure on the part of the defendant, and such finding being sufficiently supported, the legality of the charges therefor need only be determined.

The Warehouse Act of 1909 (Stats. 1909, p. 437, amended 1919, p. 398, and 1923, p. 676) contains, among other sections, the following (sec. 21) : "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

Section 22: "Except as provided in the following section, a warehouseman shall keep the goods so far separate from goods of other depositors, and from other goods of the same depositor for which a separate receipt has been issued, as to permit at all times the identification and redelivery of the goods deposited."

Section 27 of the same act further provides as follows (sec. 27) : "Subject to the provisions of section 30, a warehouseman shall have a lien on goods deposited by the owner or by the legal possessor of the property on or the proceeds thereof in his hands, for all lawful charges for storage and preservation of the goods," etc.

Section 30 requires the receipt to state upon its face the charges which will be claimed against the property. Section 34 specifies that, "if the goods are of a perishable nature, or by keeping, will deteriorate greatly in value, or by their odor, leakage, inflammability, or explosive nature, will be liable to injure other property, the warehouseman may give such notice to the owner, or to the person in whose name the goods are stored, . . . to remove the goods from the ware-

house, etc., and upon failure to do so, the warehouseman may proceed to sell the same.''

Section 1837 of the Civil Code, relating to the deposit of goods for keeping, reads: ''If a thing deposited is in actual danger of perishing before instructions can be obtained from the depositor, the depositary may sell it for the best price obtainable, and retain the proceeds as a deposit, giving immediate notice of his proceedings to the depositor,'' and section 1858a of the Civil Code specifies further: ''No warehouseman, wharfinger, or other person must sell or encumber, ship, transfer, or remove beyond his immediate control any property for which a receipt has been given, without the consent in writing of the person holding such receipt plainly indorsed thereon in ink.''

The record shows that it was necessary to keep the grain stored by the plaintiff in the defendant's warehouse properly sacked in order that it might not be wasted or commingled with other property; that grain stored in warehouses is stored in sacks and that grain stored by each depositor is separately piled so as to be readily distinguishable.

By sections 21 and 22 of the Warehouse Act which we have quoted, the warehouseman is made liable for any injury to stored property occasioned by his failure to exercise such care in regard thereto as a reasonably careful owner would exercise in relation to similar property, and that it is necessary for the warehouseman to keep the stored goods separate where a receipt has been issued therefor, so as to permit at all times of identification and redelivery of the stored property, and section 27. gives the warehouseman a lien for all lawful charges for storage and preservation of the goods.

In 40 Cyc., page 450, the text-writer thus states the rule in relation to charges such as we are here considering. It is there said:

''A contract with a warehouseman may contain an express provision as to the charges and expenses which the bailor is to pay, in which case the contract will govern as to the amount, the items, and the time of payment. In the absence of a special contract, where goods are received by a warehouseman for storage in the usual course of business, there is an implied contract on the part of the bailor to pay

the customary charges for storage and expenses, or such reasonable charges as warehousemen of like capacity and facility are entitled to; and this is true even though the warehouseman does not know the identity of the owner until possession is demanded. The warehouseman is entitled to reimbursement of such sums as the customs and usages of trade and commerce require him to expend in order to conserve and protect the property."

In the instant case, the receipts issued, which constitute the contract, binding the warehouseman to redeliver the property to the person entitled thereto, there is written into and a part of the receipt a provision relating to the necessary charges for resacking stored grain. The court also found the existence of a custom relating to such charges, but we think the receipts issued in this case by the warehouseman and accepted and held for nearly four years by the plaintiff, containing a provision relative to the resacking of the grain in question, justified the court in coming to the conclusion that it was within the understanding of the contracting parties that the costs and expenses of resacking the grain in question necessary for its preservation should be borne by the owner of the grain. It was certainly not within the contemplation of the parties that the grain should remain in the warehouse for such an unusual period of time without any care or attention or without resacking, when necessary to preserve the identity of the stored wheat and to keep it ready for redelivery upon demand. **[2]** Section 1856 of the Civil Code is applicable here. That section reads: "A depositary for hire has a lien for storage charges and for advances and insurance incurred at the request of the bailor, and for money necessarily expended in and about the care, preservation and keeping of the property stored . . . "

It will be observed that the foregoing section covers two classes of obligations: 1. Advances and insurance incurred at the request of the bailor, which would appear to cover money advanced to the bailor upon the security of the property stored; and, secondly, without any request on the part of the bailor, the depositary has a lien for money necessarily expended in and about the care, preservation, and keeping of the property stored. These are obligations resting upon the depositor of goods, the first of which, advances and in-

surance at his request, the other class, such charges as the bailee or warehouseman necessarily incurs in the preservation of the property. The general rule as to expenses in the preservation of property is thus stated in 6 Corpus Juris, 1131: "Reimbursement for actual disbursements and necessary and useful expenses incurred in preserving the property bailed, or in fulfilling the objects of the bailment, may be recovered either by a gratuitous bailee or by a bailee where the bailment is for the benefit of both parties."

Likewise, in 27 R. C. L. 1007, it is said: "The doctrine is firmly settled that every bailee for hire including, of course, a warehouseman who by his labor and skill has imparted an additional value to the goods entrusted to him has a lien upon the property for his reasonable charges."

A somewhat similar case is found in *Bacon* v. *Fourth National Bank*, 9 N. Y. Supp. 435, where it is held that in an emergency a depositary has the implied authority to incur expenses on behalf of the owner for the preservation of the property and that an agent has the duty of taking such steps as are reasonably necessary for the protection of his principal's property and for its preservation, and that having made the outlays for that purpose, he is entitled to reimbursement.

It is further stated the reason for the rule is that a request on the part of the principal is inferred where the advances are made in the regular course of business, or even on the spur of some pressing urgency not provided for by any rule, since the employer may fairly be taken to have authorized the employee to make the expenditure that a prudent man would conceive necessary for the safeguarding of his interests.

There is some testimony to the effect that some of the grain in question had been infested with weevil, and under such circumstances the law would certainly authorize the warehouseman to take such steps as were reasonably necessary in the resacking and repiling of the grain to prevent other grain belonging to other people, stored in the same warehouse, from becoming infested.

Our attention has been called to the opinions and orders of the Railroad Commission relative to the charges allowed to be made by warehousemen. In some of the cases resacking charges have been provided for in the traffic schedule,

and in other cases resacking charges have been allowed in addition to the regular tariff charge fixed for the particular warehouse in question, but we find nothing in any of the cases cited or in any of the rules and regulations of the Railroad Commission called to our attention affecting in any way the judgment entered by the trial court in this case.

[3] It is further argued on the part of the appellant that the grain in question comes under the terms and provisions of section 34 of the Warehouse Act relating to perishable property and that the defendant's only remedy was to proceed to sell the stored wheat. Section 35 of the same act, however, expressly states that the remedy for enforcing a lien provided for in the act does not preclude warehousemen from resorting to other remedies allowed by law. However, the term "perishable property," though a relative term as used in the act, relates to property subject to speedy decay, or, as we find in the law dictionaries as perishable property, "goods which decay and lose their value, if not speedily put to their intended use."

In the instant case it was and is a question of perishable containers and not of perishable property. There is nothing in the record indicating deterioration on the part of the grain. Wastage has a different meaning from deterioration. A perfectly good article of merchandise may be wasted while other articles of merchandise are of such a nature that unless speedily consumed they deteriorate. As an instance we might state, grains do not speedily deteriorate, even though they may be wasted; vegetables and fruits will speedily deteriorate and become valueless.

We do not think the case of *Chesapeake & Ohio R. R. Co.* v. *Saulsbury,* 126 Ky. 179 [12 L. R. A. (N. S.) 431, 103 S. W. 254], wherein it was held that corn is perishable freight within the terms of the Kentucky statute, relative to the sale of unclaimed property, applicable to the circumstances here presented. The definition given in the case of *Illinois Cent. R. R. Co.* v. *McClellan,* 54 Ill. 58 [5 Am. Rep. 83], holding that corn was not perishable property, is the one we think applicable. It was there said: "Perishable property in the commercial sense is that which from its nature decays in a short space of time without reference to the care it receives. Of that character are many varieties of fruits, etc." In *Newman* v. *Kane,* 9 Nev. 234, "Perish-

able property" was defined as "that which is necessarily subject to immediate decay and does not apply to property like hay, which with ordinary and reasonable care can be preserved."

The property stored by the plaintiff with the defendant could be and was preserved for a period of four years, and all that it required was the ordinary and usual care to prevent wastage, in order that it might be ready for redelivery upon demand by the owner of the warehouse receipts, upon presentation thereof.

The court further found that the defendant notified the plaintiff of the condition of the grain and the necessity for resacking by two letters, one dated January 29, 1924, and one dated June 6, 1924, and that plaintiff took no action in relation thereto.

The judgment of the trial court is affirmed.

Hart, J., and Finch, P. J., concurred.