### MURPHY *v.* WESTERN & A. R. R. and others.

*(Circuit Court, E. D. Tennessee, S. D.* April Term, 1885.)

1. CARRIERS OF PASSENGERS—SEPARATION OF PASSENGERS ON ACCOUNT OF COLOR.
   A railroad company may set apart certain cars to be occupied by white people, and certain cars to be occupied by colored people; but if it charges the same fare to each race it must furnish substantially like and equal accommodations.

2. SAME—DUTY TO PROTECT PASSENGERS FROM INSULT AND INJURY.
   It is the duty of a railroad company to protect its passengers from insult and injury so far as it can, and if the conductor and brakeman on a train conspire with passengers thereon to remove another passenger who has a right to be on such train, or see such passengers eject their fellow-passenger, and make no effort to prevent it, or make no attempt to repair the mischief by restoring him to his seat, the company will be liable.

3. SAME—DUTY OF PASSENGER.
   While a railroad company is held to a rigid accountability as to its duties to its passengers, a passenger is required to demean himself in such a way as not to be offensive, vulgar, obscene, or coarsely disagreeable to his fellow-passengers, or expose them to suffering or danger; and if he fail in these respects he may be removed by the train-men from the train; and in such removal they may use as much, and no more, force as is necessary to his removal.

4. SAME—LIABILITY OF PASSENGER FOR TORT.
   A passenger who enters a car and forcibly ejects a fellow-passenger therefrom is liable therefor.

5. SAME—MEASURE OF DAMAGES FOR EJECTION FROM TRAIN.
   If a colored man enters a car set apart for white people with knowledge of that fact, so that he may be removed from the car and train for the purpose of bringing suit for damages against the railway company for such removal, the jury may consider that fact in mitigation of damages, and should not allow liberal and exaggerated compensation for his mental sufferings; but if no such intention appears, he may be allowed full and liberal compensation for his sufferings and other injuries, and such sum as punitive damages as the jury may think right in preventing the recurrence of the like mischief.

Charge to Jury.

*W. J. Clift* and *Wheeler & Marshall,* for plaintiff.

*Clift, Bates & Cooke,* for defendants.

KEY, J., *(orally.)* In order to be prepared to decide legal controversies justly, the judge and the members of the jury should be careful to avoid the influence of partiality or prejudice. We belong to the white race, while the plaintiff is a colored man. During the entire period of our recollection there have been bitter controversies and conflicts over the condition and circumstances, and rights of the colored race in this country. From these much bad blood, hostile feeling, and prejudice have resulted. Indeed, race prejudice, in all ages, and in all parts of the earth, has been the fruitful source of animosity and war. On the other hand, the principal defendant is a railroad, and in this state, as well as in a great part of our country, railroads have been the subjects of much denunciation and abuse, and of popular hatred. It is your duty to steer clear of all these influences upon one side as well as the other, and I believe you will do so. The ancients often painted Justice as blindfolded, so that parties could not be seen, and holding the scales with even hand. So we

should be careful not to know the parties to this suit, and to try the cause as the law and testimony demand.

Railroads have become the great instrumentalities by which the transportation of freights and passengers is conducted. The immensity of their business and extent of their powers make them the anxious objects of legal authority and regulation. They are, in a large sense, public institutions subject to public control. This regulation and control must be reasonable. The nature and vastness of their business require great skill, judgment, discretion, and capital, and they must be allowed to use and exercise the means and powers necessary to the conduct of their business.

The plaintiff in this case says that he purchased a first-class ticket for his passage over the Western & Atlantic railroad from Dalton, Georgia, to Chattanooga, Tennessee; that he took his seat in the rear car of the train without objection; that after the train started the conductor came to him and told him that people of plaintiff's color were not permitted to ride in that car, and that he must go forward into another car; that he offered the conductor his ticket, but the conductor declined to take it, and plaintiff refused to go into the forward car; that the conductor afterwards sent the porter of the train, who was a colored man, for his ticket, and he gave it to him. Not far from the same time, he says, a brakeman came to him and told him that colored people were not permitted to ride in that car, and asked him to go forward, but he refused, and the brakeman took plaintiff's baggage, without permission, into the forward car; that on the departure of the train from a station between Dalton and Chattanooga two passengers, who took the train at that station, came to his seat and seized him roughly and told him he must go into the other car, and dragged him from his seat, to which he clung as long as he could, and that, in doing so, his hand was bruised or lacerated so that it bled and pained him for some time after, and his back was wrenched so that he could do nothing for some days. These men hurried him forcibly out of the car into the forward car. That the officers and employes of the train did not interfere, though some of them saw the transaction, to prevent its occurrence. These passengers left the train at the next station, and one of them, and the conductor and a brakeman of the train, are sued along with the railroad.

The defendants do not controvert or deny that the material statements of plaintiff are true. Defendants' witnesses say that the rear car of the train was reserved as a car for ladies and those who escorted them. There were no ladies in the car; the car had few passengers, and none of them accompanied ladies. No ladies entered the car until the train reached the station upon leaving which he was ejected from the car. The train-men saw the plaintiff ejected from the car; did not interfere; did not say anything about it then or afterwards to plaintiff, or those who did eject him. The train-men say they did not conspire with those who removed plaintiff, or have any knowledge or

understanding that plaintiff was to be driven from the car. According to the testimony of defendants the young man who sold newspapers, fruits, etc., on the train, styled by the witnesses "The Butcher," and who was not in the employ of the railroad, but in that of the Southern News Company, was the active party in fomenting the trouble upon this occasion. He is examined as a witness for the defendants, and shows evident pride in the part he performed. According to his account he discovered that the train-men were not sufficiently resolute in turning the plaintiff out of the car. He appealed to the passengers to aid him in doing so. They told him that they had no objection to plaintiff's retaining his seat, as he had as much right to his seat as they had to theirs. When the train arrived at Ringgold, Georgia, two gentlemen took passage on the train, accompanied by ladies. This witness told them that they had better not enter the ladies' car, as there was a negro in it, whereupon these two passengers joined the news butcher in the expulsion of the plaintiff.

My observation has convinced me that those who are most sensitive as to contact with colored people, and whose nerves are most shocked by their presence, have little to be proud of in the way of birth, lineage, or achievement. I cannot tell how these things are as to this witness. There is no controversy as to the facts in this case. I am of the opinion that a railroad company may set apart a particular car for the use of ladies, and those accompanying them, and exclude all other passengers from it. But the plaintiff was not ejected from this car because he was accompanied by no lady, but because he is a man of color. Had he been accompanying a lady, the result, as to him, would have been the same, and she would have been required to go with him. Colored people, whether male or female, were not allowed to ride in the ladies' car. Again, I believe that where the races are numerous, a railroad may set apart certain cars to be occupied by white people, and certain other cars to be occupied by colored people, so as to avoid complaint and friction; but if the railroads charge the same fare to each race, it must furnish, substantially, like and equal accommodations. The money of one has the same value as that of the other, and should purchase equal accommodations. There is no equality of right, when the money of the white man purchases luxurious accommodations amid elegant company, and the same amount of money purchases for the black man inferior quarters in a smoking car. The law does not tolerate such discrimination on the part of a railroad company. The carrier may furnish second or third class accommodations when he charges fare accordingly. Then the passenger may choose whether he will purchase a first, second, or third class ticket, and cannot complain when he receives that which he purchased. But if the carrier sells none but first-class tickets, he must give none but first-class accommodations, unless there arise emergencies when it is impossible or unreasonable for him to do so.

A train with but two cars in which passengers could go, as in this case, and in which the ladies and their friends had one exclusively, the other car being used for smoking and for gentlemen without lady friends, does not give like accommodations to all. The passenger from the rear car may go into the forward car and smoke, but the passenger in the forward car cannot go into the rear car for any purpose. He cannot go into it to smoke or to escape the smoke, however offensive to him. Nor can a colored man and woman of genteel appearance, good repute, and good behavior, who have paid for first-class passage, be sent to the smoking car simply because they are black. As well might all red-headed men be excluded from the ladies' car because their heads are red. A railroad company may make all needful rules and regulations in the conduct of its affairs, but such rules must be reasonable and impartial,—fair to all. If it separate passengers upon the color line, it must treat each alike from the intrusion of the other. If it give white people one end of a car and colored people the other end, and exclude colored people from the white end, it must also exclude white people from the colored end. A passenger has no right to select the car upon which he will travel without direction or interference on the part of the carrier. When he proposes to take the train the train-men may designate the car which he may enter, and he has no right to complain if such car is as comfortable and convenient in its equipment as the others of like character. But if the train-men leave the cars in an accessible shape, and the passenger enters without opposition or objection and selects an unoccupied seat, and places himself in it after having purchased the ticket or paid the fare required for a seat in such car, that seat, or so much of it as is necessary for him to occupy, becomes his for the trip, unless he be promptly notified to the contrary, especially as against another passenger who afterwards comes upon the train.

The defendant, who was a passenger, and as such entered the car and forcibly removed the plaintiff from his seat and ejected him from the car, had no right to do so, and is liable for the injury. Moreover, it is the duty of the railroad company to protect its passengers from insult and injury as far as it can. If a mob, or some other power or force the agents of the road cannot overcome or oppose or resist with success, or any reasonable prospect of it, injures the passenger, the road is not liable; but if he be injured by something which the exercise of diligence, activity, and courage would have prevented, and the officers of the train fail to make an effort to prevent the mischief, the road is liable. If the conductor and brakeman conspired with the passengers to remove the plaintiff, the railroad company is liable; or, if these agents of the road saw what these passengers were doing to their fellow-passenger, and made no effort to prevent the mischief, gave it no discountenance, or made no attempt to repair the mischief by restoring the plaintiff to the seat from which he was removed, the railroad company is liable. The conductor and one of

the brakemen are sued along with one of the passengers who removed plaintiff, and with the railroad company. If these two persons conspired and confederated with said passengers to eject the plaintiff from his seat and from the car, or gave them aid and encouragement in so doing, or were present to aid and encourage, they would be personally liable. But if they did not so conspire or aid, nor were present to aid, but merely failed to prevent the act, they are not personally liable, as there was no legal personal obligation resting upon them to interfere; but if they failed to do their duty as agents of the railroad company, by reason of which plaintiff was injured, the company would be liable.

If you find against the defendants, or any of them, you may give such an amount as damages as, in your judgment, will compensate the plaintiff for his physical and mental suffering, and for his loss of time and necessary expenses, as a compensation for his injury; and then, if you think the circumstances justify it, you may allow such an additional sum as you think proper as exemplary damages. It is proper for me to say, however, that while a railroad is held to a rigid accountability as to its duties towards its passenger, there rest upon the passenger certain duties. It is required of him not to be offensive, vulgar, obscene, or coarsely disagreeable to his fellow-passengers. It is expected of him that he demean himself in such way as not to outrage the feelings of his fellow-passengers, or expose them to suffering or danger. If he fail in these, and other respects I need not mention, the train-men may remove him from it, and use as much, and no more, force as is necessary to his removal. Now, should you conclude that the plaintiff is entitled to damages against any of the defendants, and you should believe from the proof that the plaintiff placed himself in the car and pursued the course he did so that he might be removed from the car and train, for the purpose of bringing a suit,—if he sought and desired what followed,—he is not entitled to exemplary damages; nor would a jury be justified in allowing him liberal or exaggerated compensation for his mental and physical sufferings. If he sought and desired that which befell him, that fact goes in mitigation of his damages. If there is no evidence which convinces you that such was his purpose, you should give him full and liberal compensation for his sufferings and other injuries, and may allow such sum as punitive damages as you may think right in preventing the recurrence of a like mischief.

The jury rendered a verdict against the passenger defendant and the railroad company for $217, and in favor of the conductor and the brakeman.

See *Logwood* v. *Memphis & C. R. Co.*, *ante*, 318, and *The Sue*, 22 FED. REP. 843.—[ED.