## Chesapeake & Ohio Railway Company, et al, v. Spiller.

(Decided January 30, 1914.)

### Appeal from Franklin Circuit Court.

1. Carriers—Rules and Regulations for Operation of Trains—Duty of Passengers to Obey.—It is the duty of a carrier in the interest of the traveling public to adopt reasonable rules and regulations for the operation of its trains, and it is likewise the duty of a passenger to obey such rules and regulations when requested.

2. Carriers—Rules and Regulations for Operation of Trains—Duty of Passenger to Obey.—A rule of a carrier, the enforcement of which will generally redound to the comfort, convenience, safety, and health of the traveling public is a reasonable one, and where there is a persistent refusal upon the part of a passenger to comply with such a rule or to permit the trainmen to enforce the rule, the trainmen may use such force as may be necessary to remove the passenger from the car in order to enforce the rule.

3. Carriers—Rule forbidding Turning of Seat Reasonable.—It is a reasonable rule of a carrier forbidding the turning back of seats so that one will face the other in a passenger coach.

SHELBY & SHELBY, R. L. NORTHCUTT and IRA JULIAN for appellants.

T. B. McGREGOR, M. M. LOGAN and LOGAN & HAZELIP for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

This is an action for damages by appellee against the appellants, Chesapeake & Ohio Railway Company and Charles Richardson, because of his alleged wrongful ejection from one of the company's trains of which Richardson was the conductor.

The petition alleges that the appellee on the morning of the 3rd of March, 1912, purchased from the company a ticket from Louisville to Frankfort, and boarded its train at Louisville; that he was accepted as a passenger by the defendant, and while he (the plaintiff) was not unlawfully violating any rule of the defendant company, the conductor of said train assaulted him in a rude and insulting manner, and roughly and insultingly ejected him from the train whereby he was humiliated, mortified, and inconvenienced.

To this petition each of the defendants answered, denying the material parts thereof, and in a separate paragraph pleading that under the rules and regulations of the defendant company then in force passengers were not permitted to turn seats backwards or to ride in seats turned backwards; that upon the occasion mentioned the plaintiff was informed by the employes of the company in charge of the train that it was against the rules and regulations of the company for seats to be turned, and that plaintiff refused to permit them to turn back the seat, and refused to get out of the seat so that it might

be turned, and that when the employes of the train under-
took to remove him from the seat for the purpose of en-
forcing the rule he braced himself with his feet against
the seat in front of him, and when the conductor took
hold of his feet he was kicked in the breast and stomach
by the plaintiff, and thereupon the train employes lifted
the plaintiff from the seat, carried him to the platform,
and plaintiff walked down the steps and alighted from
the train; that in so removing plaintiff from said seats
and train the employes used no more force than was
necessary to enforce the rule. To this second paragraph
of the answer the lower court sustained a demurrer,
which raises the question whether or not the rule pleaded
was a reasonable one which it was the duty of a passen-
ger to obey when requested.

It is the duty of a carrier in the interest of the travel-
ing public to adopt reasonable rules and regulations for
the operation of its trains, and it is likewise the duty of
a passenger to obey such rules and regulations when re-
quested.

It is the argument for the appellee that it is an un-
warranted interference with the passenger's rights for
the company to enforce a rule requiring him to face the
front of a car, or to say that he should ride with his
face in any particular direction; that inasmuch as it ap-
pears that the car was not crowded, and it was unneces-
sary to turn back the seat for the comfort or convenience
of other passengers, that the enforcement of the
rule under the circumstances was unreasonable;
but as a matter of common knowledge we know
that although the car may not be crowded after
leaving a particular station that upon its arrival at the
very next station it may be boarded by a sufficient num-
ber of passengers to occupy all of the seats. It is usual
and customary for passengers to ride with their faces
toward the front of the train, and there are many per-
sons who cannot ride otherwise without being made sick.

It is the well known custom for many persons who
are permitted to sit in a coach with two seats facing each
other to sit in one of them and occupy the other with
their baggage and bundles.

But, the strongest and best reason why this rule is
reasonable and should be enforced is that it is in the in-
terest of sanitation, cleanliness, and the preservation

of the health of the public. Many persons riding in two seats facing each other cannot resist the temptation to place their feet upon the seat facing them, and thereby not only soil the material from which the seat is made, but deposit upon it filth and germs with which all men's shoes come in contact, to say nothing of the clothes of a passenger who may later occupy that seat.

We are of the opinion that as the enforcement of the rule will generally redound to the comfort, convenience, and safety and health of the traveling public, it was a reasonable one. 6 Cyc., 546; Gulf, &c., Ry. Co. v. Moody (Tex.), 30 S. W., 574.

The rule being a reasonable one, and the passenger having persistently refused to comply with it upon request, the only method left for those in charge of the train was to enforce the rule by ejecting the passenger.

Hutchinson on Carriers, Vol. 2, Sec. 1077, says:

"The passenger takes his ticket always with the understanding that he will conform to the reasonable regulations of the carrier as to the conduct of the carriage; and it has been held that an obedience to such regulations is a condition of the contract to carry, though not expressed in the contract or known to the passenger; and for a persistent refusal to comply with them, the carrier may resort to the necessary force to remove the passenger from his conveyance."

6 Cyc., 549, says:

"A proper method of enforcing a reasonable rule or regulation of the carrier as to the conduct of passengers is by ejecting from the train one who refuses to comply."

The uncontradicted evidence is that the brakeman first approached appellee and informed him of the rule of the company, and requested him to permit the seat to be turned which he refused to do; that shortly thereafter the conductor requested him twice to get up so that he might turn the seat back, and that he persisted in his refusal; that thereafter the conductor told him that it was his duty to turn that seat back, and he would have to remove him from it, and upon his further refusal the conductor took hold of him and undertook to remove him, but appellee braced his feet against the seat in front of him and resisted the efforts of the conductor; that the conductor then told him he would have to stop the train and eject him if he did not submit to the enforcement of

the rule, and so strenuously did appellee resist the efforts of the conductor that it was necessary for him to call the brakeman to assist him in removing appellee from the seat; that appellee was then lead to the platform where he was again told that he might go back and occupy the seat if he would submit to the enforcement of the rule, and he still declined, whereupon he was required to get off. It does not appear that the train officials used any more force than was necessary to remove appellee from the seat, but it does appear that in some way, which is not clearly explained, he received a slight scratch on one of his legs.

It is perfectly apparent from the testimony that the whole trouble grew out of the obstinate and persistent refusal of appellee to comply with this regulation after having been three times politely requested so to do, and if in the melee his leg was injured, or he was humiliated or mortified by his ejection, it is chargeable alone to his own unreasonable and reprehensible conduct.

Upon another trial, if the evidence is substantially the same, a peremptory instruction should be given.

The judgment is reversed, with directions to overrule the demurrer to the second paragraph of the answer, and for further proceedings consistent herewith.