## City of Somerset v. Gainesboro Telephone Company.

(Decided October 27, 1922.)

### Appeal from Pulaski Circuit Court.

Telegraphs and Telephones—Franchises and Privileges—Parol Evidence.—Held that the term "Somerset subscribers" as used in the telephone franchise contract of the parties, refers to all subscribers served through the exchange located in the city of Somerset and not merely such subscribers as lived within the corporate limits of the city, regardless of whether its meaning is ascertained from the terms of the contract alone or by resort to parol evidence; and that without some such explanation its meaning is uncertain and ambiguous.

CHRIS L. TARTER and E. T. WESLEY for appellant.

WILLIAM and B. L WADDLE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In 1916, the appellant city of Somerset sold to the appellee telephone company a franchise to operate a telephone system within the city limits for twenty years. Section 10 of the franchise ordinance specifies the maximum rates that may be charged for business or residence service, and that these specified rates shall remain in force:

"Until the list of Somerset subscribers shall have reached 750, and then the rate for all classes of business may be increased fifty cents per month, and when the number of subscribers shall have reached 1,250 then service, direct, business and residence may be increased fifty cents per month per telephone by purchaser giving 30 days written notice to subscribers affected."

Appellee charged the specified rates until in 1918, when claiming to have 750 "Somerset subscribers," it increased the rate on business phones fifty cents per month, and more than 30 days before November 1, 1920, gave notice as above required that having more than 1,250 "subscribers," it would on that date increase the existing rates on both business and residence service fifty cents per month. Appellant then instituted this action to enjoin the proposed increase on November 1, 1920, alleging as ground therefor that appellee did not have 1,250 or even 750 subscribers within the corporate limits of the city of Somerset.

Appellee answered, admitting that it did not have 1,250 or 750 subscribers within the corporate limits, but alleged that it had 1,271 "Somerset subscribers;" that the phrase "list of Somerset subscribers" as used in section 10 of its franchise meant, and was so understood at the time by the parties to mean:

"All subscribers connecting with and receiving service through the exchange in the city of Somerset, Ky., regarless of whether such subscribers actually resided in the said city; that the consideration for the sliding scale of rates was the giving to those subscribers in the city of Somerset, Ky., free county service over subscribers' lines connecting with the exchange in the city of Somerset, Ky., and being served by that exchange; and also giving free county service to and through any exchange in Pulaski county, Ky., owned by the defendant; . . . that the phrase 'list of Somerset subscribers' in telephone parlance had then and has now a well defined

meaning and was so understood by the city council and all other parties connected with the sale of said franchise, and so understood likewise by the purchaser thereof, and that is, that the word 'Somerset' was used to designate by name the telephone exchange, and that any one being served by that exchange, as distinguished from any other exchange the purchaser might own, would be included in the list of subscribers, and would be included in said list, regardless of whether said subscriber actually resided within the city limits of Somerset or not; . . . that it was never contemplated that the city of Somerset in population would so increase during the life of the franchise as to furnish 1,250 subscribers, or even 750 subscribers, within the city limits, but what the parties did agree upon and have in mind at the time said franchise was sold and purchased was that whenever said number of subscribers, who were served by the Somerset exchange, should reach the number provided for, that then the increase as therein provided for would be authorized and made.''

The issues were completed by traverse of the affirmative allegations of the answer, proof was taken and a trial had, resulting in a judgment dismissing the petition, from which the plaintiff appeals. The proof shows without contradition that appellee has 1,271 subscribers who are served through the Somerset exchange, and with any or all of whom subscribers living in the city can communicate without other charge than that permitted by the franchise.

The sole question for decision, therefore, is, whether or not the phrase ''list of Somerset subscribers'' as employed in section 10 of the franchise, means subscribers living within the corporate limits of Somerset or subscribers served through the Somerset exchange.

In support of the former contention, appellant insists (1) that the words ''Somerset subscribers'' have a common and approved meaning which is neither technical nor obscure, and mean subscribers living in Somerset, and (2) that the other provisions of section 10 of the franchise show they were used in this ordinary and approved sense.

Even if we might assume, which we do not think is true, that these words have a common and approved meaning that is neither ambiguous nor obscure, and by ordinary usage they mean subscribers living in Somerset and no others, we can not disregard, as do counsel for

appellant in their argument, the fact that appellee plead and has proven by evidence that was not objected to or contradicted that in the telephone business such words have a specific or technical meaning and refer not alone to the subscribers living in the named city where the exchange is located, but to all the subscribers who are served through that exchange. It results therefore that unless the ordinance itself plainly indicates a different meaning, these words, regardless of their ordinary meaning, were used in this sense and must have been so understood by the parties at the time, since the doctrine is well established that customs or usages generally and universally recognized in a trade or business are presumed to have been known by persons outside of, as well as within, the trade or business in all transactions and contracts relating thereto, unless the contrary appear. 17 C. J. 454; 13 C. J. 561.

No other section of the franchise contract refers to rates or throws any light upon the meaning of these words, but section 10 provides that for the prices therein named appellee shall furnish to all "subscribers within the city limits . . . efficient telephone exchange service . . . including county service over *subscribers* lines and exchanges" belonging to appellee or connecting companies "where free exchange service is furnished."

This provision makes it plain, we are sure, that the contracting parties contemplated "subscribers" both within and without the city limits, and indicates rather clearly we think that except when described as "subscribers within the city limits of Somerset" all subscribers were included whether described as "Somerset subscribers" or "subscribers" simply. These two latter terms certainly were used in exactly the same sense, since both are used in fixing the number of "subscribers" that would authorize an increase in rates to "subscribers within the city." The city council could only contract for the rates to be charged to "subscribers within the city," but it could make, and naturally would have made, those rates depend upon the service furnished city subscribers both within and outside of the city, and this we think is what the contract means and says.

Moreover appellee, by evidence that was neither objected to nor contradicted, has proven that the parties

so understood the contract to mean when it was executed by them.

We are therefore of the opinion that precisely the same conclusion must be reached as to what the parties meant by "Somerset subscribers" and "subscribers" with reference to an increase of service rates, whether we look to the terms of the contract alone or to the parol evidence as well to explain their meaning, which in our judgment is uncertain and ambiguous without some such explanation.

Judgment affirmed.