## Brumfield v. Consolidated Coach Corporation.

(Decided June 19, 1931.)

4

JOHN W. ROWE and A. A. BABLITZ for appellant.

R. W. KEENON and WALLACE MUIR for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON.—
Affirming.

This appeal presents for review the trial of an action by Lucille Brumfield, appellant, against the Consolidated Coach Corporation, appellee, for an alleged breach of contract arising out of the purchase of a ticket by her of the agents of the appellee for transportation from Lexington, Ky., to Danville, Ky., on the 16th day of July, 1927, at its Union Bus Station, located at 110 Walnut street, Lexington, Ky. On that date she purchased from its agent a ticket "for a continuous trip from Lexington to Danville, Ky. for which she paid $1.40." After purchasing the ticket, about 4 p. m. she presented herself at the door of the bus which was leaving Lexington at that hour for Danville, when she claims she was refused admittance and passage, there being at the time ample and sufficient room, the bus having several vacant seats on it.

As a result of the person in charge of the bus refusing to permit her to become a passenger on it, she was compelled to remain in Lexington longer than she intended, by reason of which, she alleges, she was inconvenienced, worried, humiliated, and suffered mental anguish. This language is found in her petition:

"The plaintiff states that the defendant is a common carrier for hire, under the laws of the State of Kentucky and as such common carrier, holds itself out to the public as a carrier of passengers to the capacity of its bus and it is the duty to carry all suitable persons who offer themselves in conformity with the reasonable rules of the company and the laws of the State of Kentucky. The plaintiff, Lucille Brumfield, states that she is a colored person of the negro race and that she was discriminated against by the said defendant, its agents or employees without good cause; that it is the duty of defendant to

provide equal and suitable accommodation for colored as well as white passengers between the points of its preparation.''

The appellee filed a special demurrer and motion to strike certain provisions of the petition, which were overruled. On the 29th day of October, 1927, it filed an answer merely traversing the petition. On the 6th day of April, 1929, it filed an amended answer, wherein it set up as a defense that on the 16th day of July, 1927, and prior thereto, it had been its custom to reserve seats on its bus for passengers who would call by phone, and engage with it so to reserve seats, and that on this particular occasion, at the time appellant applied for passage, its seats had been reserved by other passengers in accordance to this custom, and that it notified plaintiff of this fact at the time, and that its next bus would leave Lexington for Danville about 5 p. m., but that she refused to accept passage on this second bus. To this amended answer, a demurrer was sustained and the action was remanded to the rule docket. On the 2d day of May, 1929, the appellee filed a second amended answer wherein it alleged ''that for sometime prior to the 16th day of July 1927, it had established a rule in reference to the operation of its buses wherein drivers, ticket agents and employees were authorized and instructed to reserve seats for any passenger who might call or notify them prior to the leaving time of said bus, and under said rule the said bus driver was authorized and directed to reserve these seats as directed by the prospective passengers. This rule was known to the employees and agents of said defendant and had been in effect for some months prior to the above date and on the above date two passengers had called from the Drake hotel in Lexington and reserved two seats on the bus upon which plaintiff applied for passage; that all seats were occupied at the time except two, and that the driver of said bus acting under said rule as to reserving the seats refused to accept plaintiff because all of the seats were occupied except the two reserved as herein set out.'' It further alleged that prior to July 26, 1927, it had adopted a rule not to permit any greater number of pasengers to board its bus than there were seats upon it for passengers; provided there was another bus going over the route in a reasonable time, and that another bus was to follow the one upon which the plaintiff sought passage within a

short time thereafter. It alleged that it was acting under such rule or regulation in refusing to accept plaintiff as a passenger. Appellant moved to strike certain portions of this amended answer. Her motion was overruled. She entered a motion to require it to file a certified copy of the rule. She filed a general demurrer to this amended answer and, by order, it was submitted on her general demurrer. Thereupon time was given appellee "to file a memorandum." On the 4th day of September, 1929, she filed a reply to the amended answer, the first paragraph of which is a denial. In the second paragraph, she averred

> "that the said driver for the said company has no legal right or any right whatsoever to adopt any rule, regulation for the governing and regulation of its busses applying to its patrons unless such be and is reasonable and equally applicable to each and all applicants for transfer and transportation alike."

On the 19th day of November, 1929, a jury was impaneled, and during the progress of the trial the appellee tendered a second amended answer, to the filing of which the appellant objected. The court permitted it to be filed, to which she objected. On the filing of this amended answer "the court then stated to the plaintiff that if it was desired by the plaintiff and she would move the court to that effect, that the court would enter an order setting aside the swearing of the jury and continue the case at defendant's cost. . . . The plaintiff stated that she desired not to have the swearing of the jury set aside. Thereupon the affirmative allegations of the amended answer were taken as controverted of record." In this second amended answer, the appellee stated that it could not comply with the order of court requiring it to file a memorandum because the rule was verbal and not written or printed, nor was it written or printed at the time plaintiff claims she was refused passage, but that it was, in effect, as set out in its first-amended answer. The trial progressed to a verdict, and the jury found for the appellee. The appellant entered a motion for a judgment non obstante verdicto and at the same time filed motion and grounds for a new trial, which were overruled. During the examination of the jury touching their qualifications, the appellant propounded to the jurors this question: "Do any of you object or

believe that colored people should ride on busses with white people?'' The appellant was clearly within her rights when propounding to the jury this question. The propriety of such inquiry has been generally recognized. Pinder v. State, 27 Fla. 370, 8 So. 837, 26 Am. St. Rep. 75; Hill v. State, 112 Miss, 260, 72 So. 1003; State v. Sanders, 103 S. C. 216, 88 S. E. 10; People v. Decker, 157 N. Y. 186, 51 N. E. 1018; State v. Brown, 188 Mo. 451, 87 S. W. 519; People v. Reyes, 5 Cal. 347; Horst v. Silverman, 20 Wash. 233, 55 P. 52, 72 Am. St. Rep. 97; Aldridge v. U. S., 51 S. Ct. 470, 472, 75 L. Ed. —.

In the Aldridge Case, supra, the United States Supreme Court, said:

> "The right to examine jurors on the voir dire as to the existence of a disqualifying state of mind has been upheld with respect to other races than the black race, and in relation to religious and other prejudices of a serious character."

To the question of appellant, several jurors answered with the statement that they did not believe they should be permitted so to ride. Thereupon the court asked each and all of the jurors if:

> "In the event the court should instruct the jury that colored persons including the appellant had under the law a right to ride on defendant's bus at the same time white persons were riding, and this being the law of the case could you and would you follow the law in this respect as given by the court and would you wholly disregard your private opinions as to the rights of the plaintiff to ride on the bus with white people and try the case according to law as given by the court? To this question several of the jurors answered in the negative and each and all of said jurors so answering were excused for cause by the court and only prospective jurors were retained who answered the above question of the court in the affirmative, to which ruling of the court plaintiff objected and excepted."

On the completion of the trial by the jury, it returned a verdict for the appellee. A judgment was entered accordingly, from which appellant appeals, complaining (a) error in allowing prejudiced jurors to sit in the trial of the case; (b) error in permitting evidence of verbal

rules; (c) verdict is against the preponderance of the evidence; (d) refusal of the court to give instructions asked for by her; (e) error in instructions given to the jury; (f) verdict of the jury is against the instructions given by the court.

As to the first complaint of appellant, it may be stated that we recognize it as fundamental, and it goes to the very root of the administartion of justice, that the parties litigant are, in jury trials, entitled to have their causes heard by an unbiased and unprejudiced jury. Leadingham v. Com., 180 Ky. 38, 201 S. W. 500; Sizemore v. Com., 210 Ky. 637, 276 S. W. 524. It is a uniform rule of this court to apply this rule and rigidly enforce it in every case where it affirmatively appears from the record that it has been violated. It is equally as well established and as strictly adhered to by this court that the trial court, in the examination of the jurors on their voir dire in civil cases, has a wide discretion, and his conclusions will not be disturbed on appeal, unless his discretion is abused. Wilder v. Louisville Ry. Co., 157 Ky. 17, 162, S. W. 557. The touchstone of qualifications of a juror is his willingness to rid his mind of predilections and honestly give to the litigants a fair and impartial trial, according to the facts and instructions of the court. The trial judge cautiously and correctly applied, in this case, the only test provided by the law and known to the courts to ascertain and determine the qualifications of the minds of jurors. Only jurors who qualified by this test were permitted by the court to qualify and try the case. We cannot say that the court abused his discretion in so ruling.

"Discretion" as here used "means sound discretion, that is, discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under circumstances and law, and directed by reason and conscience of judge to a just result." Langnes v. Green, 282 U. S. 531, 51 S. Ct. 243, 75 L. Ed. —.

She urges that the court erred when he permitted evidence of an oral rule of appellee. She insists that only a written rule or regulation may be relied on as a defense in such cases. She cites and relies upon the cases of L. & N. R. R. Co. v. Taylor's Adm'r, 104 S. W. 776, 778, 31 Ky. Law Rep. 1142; Reasor v. Paducah & Ill. Ferry Co., 152 Ky. 220, 153 S. W. 222, 43 L. R. A. (N. S.) 820; C. & O. R. R. Co. v. Austin, 137 Ky. 611,

126 S. W. 144, 136 Am. St. Rep. 307; Ponder v. Lex., Etc., Ry. Co., 164 Ky. 69, 174 S. W. 786; C. & O. R. R. Co. v. Spiller, 157 Ky. 222, 162 S. W. 815, 50 L. R. A. (N. S.) 394, Ann. Cas. 1915D, 186; L. & N. R. R. Co. v. Turner, 137 Ky. 730, 126 S. W. 372, 136 Am. St. Rep. 317.

In the Taylor Case the decedent was struck and killed by a freight train. On the trial of an action by his administrator to recover damages for his death, witnesses for the railroad company were examined as to certain written rules of the company concerning the duties of its employees in the performance of its duties, which rules were not produced at the trial. We there stated, in discussing the admission of such evidence, that ''regularly the written rules should always be produced before any testimony is allowed as to their contents; but in this case what was admitted about the rules bore so remotely upon the issue which the jury were to try that we do not see that the substantial rights of the appellant were prejudiced. . . . The witnesses had been introduced by appellant to show that the train was not running over 15 or 16 miles an hour.'' The question under consideration in that case was the competency of oral testimony as to the contents of written rules.

The Reasor Case was an action for the wrongful ejectment of passengers.

In the Austin Case the passenger reached the station about 6:30 p. m. to take the train at 7 p. m. She had her ticket. When the train arrived, she could not board it on account of the crowd. There was an enormous crowd, and before she got near the steps or had an opportunity to get on the train it pulled out. She and her party then hired a wagon and drove a distance of ten miles, and although it had been very hot during the day the night was cold and she had no wrap. A verdict was returned in her favor in the sum of $200. The basis of the recovery was failure of the train to stop a reasonable length of time for the passengers to board it.

In the Ponder Case, a passenger who boarded the train without a ticket refused to pay a higher fare prescribed by the company. Recovery was denied.

The Turner Case was an action for personal injury, and it was there held ''the rule prohibiting the opening of water-closets on trains at stations was reasonable and the railroad company had a right to adopt and enforce it.''

In no one of these cases was the question of the right of the carrier to adopt and enforce a usage, rule, or regulation which had not been previously written, or printed, and so published. The Siller Case, cited by appellant, will be hereafter considered. The contention that the appellee was without right and power to make a rule or a regulation affecting passengers, except and unless it was written or printed and adopted by the corporation itself acting through its directors, overlooks the marked and universally recognized distinction between by-laws and regulations or custom and usage. By-laws are for the government of the officers in dealing with the corporation, and must be adopted by the body of the stockholders or by the board of directors.

All regulations of a company affecting its business, which do not operate upon third persons, nor in any way affect their rights are properly by-laws of the company. Rules and regulations which operate upon and affect the rights of others are not within the operation of the principle of by-laws, State v. Overton, 24 N. J. Law, 435, 61 Am. Dec. 671. The authority to adopt and enforce such regulations is incident to the ownership of property and to its employment in the business of a common carrier; and all regulations are deemed reasonable which are suitable and reasonably necessary to enable the carrier to perform its duties which it undertakes, and to secure its just rights in such employment, and at the same time to secure and promote the convenience, comfort, safety, or health of its passengers. And such regulations are such as an individual who happens to be the sole owner of like property, employed in like business, would have the right and power to make, in virtue of his ownership of his property and of his employment as a carrier of passengers for hire, and where an agent has been appointed or employed with authority in him and his assistants to have the charge and management of such property and its use, in the business of transporting passengers, it is incident to his authority to adopt and enforce such reasonable regulations. The power to adopt and enforce such regulations may be delegated by a corporation to its employees engaged in the operation of its property in the business of a carrier of passengers. And in fact it is the only mode in which a corporation can exercise its powers. Com. v. Power, 7 Metc. (Mass.) 596, 41 Am. Dec. 465.

A carrier of passengers not only has the power, but it is its duty, to adopt such rules and regulations as will enable it to perform its duties to the traveling public with the highest degree of efficiency, and to secure to its passengers all possible convenience, comfort, and safety. Ala. G. S. R. v. Carmichael, 90 Ala. 19, 8 So. 87, 9 L. R. A. 388; Manning v. L. & N. R. R. Co, 95 Ala 392, 11 So. 8, 16 L. R. A. 55, 36 Am. St. Rep. 225; Montgomery v. Buffalo Ry. Co., 165 N. Y. 140, 58 N. E. 770; Barker v. Central Park, N. & E. River R. Co., 151 N. Y. 237, 45 N. E. 550, 35 L. R. A. 489, 56 Am. St. Rep. 626; Curtis v. Louisville City Ry. Co., 14 Ky. Law Rep. 272; Ohio Valley Ry.'s Receiver v. Lander, 104 Ky. 431, 47 S. W. 344, 882, 20 Ky. Law Rep. 913; L. & N. R. R. Co. v. Turner, 137 Ky. 730, 126 S. W. 372, 136 Am. St. Rep. 317; C. & O. R. R. Co. v. Spiller, 157 Ky. 222, 162 S. W. 815, 50 L. R. A. (N. S.) 394, Ann. Cas. 1915D, 186; Sturgill v. C. & O. R. R. Co., 227 Ky. 44, 11 S. W. (2d) 983; Hutchinson on Carriers (3d Ed.) sec. 1103, page 1289; Elliott on Railroads, vol. 1 (2d Ed.) secs. 198, 199, page 300; State v. Overton supra; Pullman Co. v. Krauss, 145 Ala. 395, 40 So. 398, 4 L. R. A. (N. S.) 103, 8 Ann. Cas. 218.

The adoption and enforcement of such regulations are subject to the requirement that they must be reasonable. The reasonableness of such regulations is a question of law for the court and not for the jury, for the obvious reason that if this question should be left to the jury, on the trial, one jury might hold such rule was reasonable and another might hold the same rule or regulation was unreasonable. Thus, its uniformity and permanency, the esential qualities of every regulation, would be destroyed. See cases, supra.

In C. & O. R. R. Co. v. Spiller, supra, the duty and the right of a carrier of passengers to adopt and enforce regulations and rules was stated in this language:

"A rule of a carrier, the enforcement of which will generally redound to the comfort, convenience, safety, and health of the traveling public is a reasonable one. It is the duty of a carrier in the interest of the traveling public to adopt reasonable rules and regulations for the operation of its trains, and it is likewise the duty of a passenger to obey such rules and regulations when requested."

In that case we quoted from Hutchison on Carriers, vol. 2, sec. 1077, as follows:

"The passenger takes his ticket always with the understanding that he will conform to the reasonable regulations of the carrier as to the conduct of the carriage; and it has been held that an obedience to such regulations is a condition of the contract to carry, though not expressed in the contract or known to the passenger."

A ticket in this state is not a contract of carriage, but only a memorandum of the agreement. I. C. R. R. Co. v. Fleming, 148 Ky. 473, 146 S. W. 1110; I. C. R. R. Co. v. Roberts, 148 Ky. 478, 146 S. W. 1113; Louisville & N. R. Co. v. Sandlin, 209 Ky. 442, 272 S. W. 912. And in the absence of an express contract to the contrary the passenger accepts the ticket subject to the custom and usages, rules and regulations of the carrier, which are uniform and permanent and are intended to protect and promote the comfort, convenience, safety, or health of all passengers alike, and at the same time secure the rights of the carrier.

A ticket entitles a passenger to transportation within a reasonable time, and not on any particular train or bus or other vehicle in use by the carrier. Campbell v. Milwaukee R. & L. Co., 169 Wis. 171, 170 N. W. 937, 6 A. L. R. 628; Maloney v. Cleveland, Cin., Chi. & St. Louis Ry. Co., 207 Ky. 262, 268 S. W. 1103; Southern Ry. in Ky. v. Miller, 129 Ky. 98, 110 S. W. 351, 33 Ky. Law Rep. 505; L. & N. R. R. Co. v. Crain, 189 Ky. 431, 224 S. W. 1063; C. & O. Railway Co. v. Coleman Fruit Co., 219 Ky. 794, 294 S. W. 463; C. & O. Railway Co. v. Saulsbury, 126 Ky. 179, 103 S. W. 254, 31 Ky. Law Rep. 624, 12 L. R. A. (N. S.) 431; Hutchinson on Carriers (3d Ed.), sec. 1110.

It is true that "the right of a pasenger to be carried by a common carrier is superior to its rules and regulations which it has the power to make and this right of the passenger cannot be affected by them, but the accommodations of the passengers while boarding the vehicle for transportation or being transported is subject to such rules and regulations as the carrier may deem proper to make, provided they are reasonable and apply generally to all alike and are of a permanent nature and not made for particular occasions or emergencies." Day v. Owen, 5 Mich. 520, 72 Am. Dec. 62; Pearsons v. Duane,

4 Wall. 605, 18 L. Ed. 447; Bennett v. Dutton, 10 N. H. 486. Such carriers are bound to carry all persons who apply for passage if the accommodations are sufficient, unless there is proper excuse for refusal. Day v. Owen, supra; Pearsons v. Duane, supra; Bennett v. Dutton, supra; Hutchison on Carriers (3d Ed.), sec. 963, page 1100; Atwater v. Delaware, Lackawanna & Western R. R. Co., 48 N. J. Law 55, 2 A. 803, 57 Am. Rep. 543.

At common law, inability of a carrier to carry a passenger for want of room in the vehicle used in the business of the carrier was a justification of the carrier in refusing to transport the proposed passenger and excuse it from liability therefor. See cases, supra. This common-law rule has not been changed or altered in this state by statutory enactment. The appellant here complains that the appellee refused to permit her to board the 4:15 bus for the purpose of transportation at that particular time. This right of appellant to board that bus at that definite time was subject to the rules and regulations of the carrier, in existence and in operation at that time and prior thereto, which affected the general public including the plaintiff as a member of it. The refusing to permit her to board the 4:15 bus for transportation was nothing more nor less than denying her that certain accommodation at that hour while making the trip from Lexington to Danville, Ky., which, according to the appellee, was in compliance with its rules and regulations controlling the rights of the passengers and of the appellee in the transaction of its business. If in the prosecution of its business by its agents and employees according to permanent, reasonable, and uniform rules and regulations governing its business as a common carrier, the seats in the bus at the time were occupied or contracted for by the other passengers, it was justifiable in refusing appellant passage and transportation on the 4:15 bus. A common carrier cannot receive and reject passengers at its pleasure. Hollister v. Nowlen, 19 Wend, (N. Y.) 234, 32 Am. Dec. 455; 2 Kent, 55; Cole v. Goodwin, 19 Wend. (N. Y.) 251, 32 Am. Dec. 470. If a carrier refuses to receive a passenger with a ticket, or qualified to purchase a ticket from it, without sufficient excuse, it will be liable to an action for damages. Story on Bailments 328; Jeremiah on Carriers 59, 2 Kent. 599. Another way of expressing it is, the law requires a carrier to receive and transport passengers without discrimination and with impartiality (Winnegar's Adm'r v. Central P. Ry. Co., 85 Ky. 547, 4 S. W. 237, 9 Ky. Law

Rep. 156; C., N. O. & T. P. Ry. Co. v. Carson, 145 Ky. 81, 140 S. W. 71; Rasor v. Paducah & Ill. Ferry Co., 152 Ky. 220, 153 S. W. 222, 43 L. R. A. (N. S.) 820; Ballard v. Cincinnati Ry. Co., 15 Ky. Law Rep. 703), and where a carrier sells a passenger a ticket, its delivery is sufficient evidence that it has contracted to carry him to the point named in the ticket within a reasonable time, not on a certain vehicle or coach of the passenger's own choosing, but subject to the rights of the carrier to assign the holder to the particular vehicle, and to the seat to be occupied by the holder while being transported. Hollon v. L. & N. R. R. Co., 209 Ky. 287, 272 S. W. 740, 42 A. L. R. 155; Adams Express Co. v. Hibbard, 145 Ky. 818, 141 S. W. 397, 38 L. R. A. (N. S.) 432; L. & N. R. R. Co. v. Sandlin, supra.

In the absence of statute, a carrier of passengers may, by reasonable rules and regulations, prescribe the number of passengers that shall ride at any one time on any of its cars or vehicles, and further adopt and enforce rules providing that when its coaches or vehicles contain the prescribed reasonable number, others desiring passage may be refused admittance by its agents. Com. v. South C. Ry. Co., 181 Ky. 459, 205 S. W. 581, 6 A. L. R. 118. One buying a ticket or making a contract for transportation without notifying the carrier what the trip is for, the measure of damage for its negligent delay in furnishing, or failing to furnish, transportation is merely compensation for the loss of time, and for any expenses incurred during the delay. Ill. Cent. Ry. Co. v. Head, 119 Ky. 809, 84 S. W. 751, 27 Ky. Law Rep. 270; C., N. O. & T. P. Ry. Co. v. Rose (Ky.) 115 S. W. 830, 21 L. R. A. (N. S.) 681; Cain v. L. & N. R. R. Co., 84 S. W. 583, 27 Ky. Law Rep. 201; L. & N. R. R. & Lighting Co. v. Comley, 169 Ky. 11, 183 S. W. 207; L. & N. R. R. Co. v. Spurling, 160 Ky. 819, 170 S. W. 192, Ann. Cas. 1916A, 487.

A different rule obtains where the breach of such contract of carriage is tortious. L. & N. R. R. & Lighting Co. v. Comley, supra; L. & N. R. R. Co. v. Manness, 225 Ky. 625, 9 S. W. (2d) 1011. One intending to take passage on a carrier may in advance make arrangements with the carrier for transportation for a special occasion or trip. Sou. Ry. Co. v. Marshall, 111 Ky. 560, 64 S. W. 418, 23 Ky. Law Rep. 813. And for a breach by the carrier an action may be maintained for delay or failure to transport as per the contract. The arrangements made

from the Drake Hotel with the appellee by the passengers was a contract with it. Day v. Owen, supra. Southern Ry. Co. v. Marshall, supra. And a carrier may by custom establish a policy of receiving or discharging passengers at places other than its depots or stations. Hutchinson on Carriers (3d Ed.) secs. 1185 and 1186, page 1390; Girton v. R. R., 199 Pa. 147, 48 A. 970; Penn. Co. v. McCaffrey, 173 Ill. 169, 50 N. E. 713; Keating v. R. R., 40 N. Y. 673. Its failure to transport such passengers as per such arrangement would render it liable to such passengers for damages resulting from its breach. Section 2739j-9 and section 2739j-13, Ky. Statutes, authorize the commissioner of motor vehicles to prescribe the route, territory, schedule, fare or tariff in connection with its service and in all cases make such other rules and regulations relative to the operation of such vehicles and public conveyances as necessity may demand, and it may at any time after notice that a carrier has violated or refused to observe any of the orders rules or regulations of the Commissioner, suspend, revoke, alter or amend any certificate issued to it. A person, company, or corporation engaged in the business of operating a bus line, by virtue of a license issued to him or it by the commissioner, may adopt rules, regulations, or customs for the benefit of the business, and the convenience, comfort, safety, or health of the passengers, not in conflict with the rules or regulations prescribed by the commissioner, under the power given to him by the statute. The nature of appellee's business as a common carrier of passengers permits it to take and receive or discharge passengers while en route, at hotels, residences, post offices, or at any other points between its fixed termini, and this rule so to do is generally and universally known by the public. This rule so to engage in receiving and discharging passengers cannot be said to be unreasonable. The appellant, when purchasing and receiving her ticket, impliedly consented to the enforcement of all existing permanent, reasonable rules, customs and usages of the carrier known to the public, regulating the receiving, loading, and transporting and discharging of passengers. See authorities, supra. In the absence of a statute declaring otherwise, such rule and regulation may exist and bind both the carrier and the passengers, without being promulgated in writing or in print. It is the fact they are generally known to the public and are reasonable and permanent, not the manner in which they were adopted and made known to the

public, is the test to be applied by the courts. If they are generally known to the public in any way or by any means, and are enforced to serve the convenience and purposes of the passengers as well as of the carrier, it is immaterial whether they were formally adopted and published by writing or print. Sturgill v. C. & O. Ry. Co., 227 Ky. 44, 11 S. W. (2d) 983; 27 R. C. L. 197; Barry v. Hannibal & St. J. Ry. Co., 98 Mo. 62, 11 S. W. 308, 14 Am. St. Rep. 610; St. Louis, Iron Mountain & Southern Ry. Co. v. Jones, 96 Ark. 558, 132 S. W. 636, 37 L. R. A. (N. S.) 418; Shortsleeves v. Capital Traction Co., 28 App. D. C. 365, 8 L. R. A. (N. S.) 287.

If such rules affect the entire traveling public and the usual and general business of the passenger traffic, it may be communicated and made known to the public in any manner sufficient to answer its purpose, in the absence of statute to the contrary. L. & N. R. R. Co. v. Turner, 100 Tenn. 213, 47 S. W. 223, 43 L. R. A. 140. Notice of the existence and operation of such rule or regulation is not required to be brought to the actual knowledge of each person purchasing a ticket or prospective passenger. Faber v. Chicago Great Western Ry. Co., 62 Minn. 433, 64 N. W. 918, 36 L. R. A. 789; Barker v. Central P., N. & E. R. Co., 151 N. Y. 237, 45 N. E. 550, 35 L. R. A. 489, 56 Am. St. Rep. 626; L. & N. R. R. Co. v. Turner, supra; Miller v. Germain Seed Co., 193 Cal. 62, 222 P. 817, 32 A. L. R. 1215. Such rule or regulation may grow out of, and from, custom and usage. In fact it is a general rule recognized by the courts that a general custom or usage pertaining to a business, so universal in its application that it is presumptively known to all persons dealing in the business to which it is applicable, unless there is a contract to the contrary, such general custom or usage is presumed to be taken into consideration by all parties when entering into the transaction. Huston v. Peters, 1 Metc. 558; Caldwell v. Dawson, 4 Metc. 121; Kendall v. Russell, 5 Dana 501, 30 Am. Dec. 696; Shaw v. Ingram-Day Lumber Co., 152 Ky. 329, 153 S. W. 431, L. R. A. 1915D, 145; National Seed Co. v. Leavell, 202 Ky. 438, 259 S. W. 1035; Starr Mills v. Bailey, 140 Ky. 194, 130 S. W. 1077, 140 Am. St. Rep. 370; City of Somerset v. Gainesboro Tel. Co., 196 Ky. 253, 244 S. W. 758; L. & N. R. R. Co. v. Engleman's Adm'r, 135 Ky. 515, 122 S. W. 833, 21 Ann. Cas. 565; L. & N. R. R. Co. v. Bodine, 109 Ky. 509, 59 S. W. 740, 23 Ky. Law Rep. 147, 56 L. R. A. 506. This court has

best stated the law applicable to the topic now under consideration in an approved instruction in this language:

"The court instructs the jury that, before they can find for defendant on account of the custom referred to in instruction No. 4, they must believe from the evidence that such custom was reasonable and of such age, such uniformity of observance at the point of delivery of the logs, such certainty and fixedness of character, and of such notoriety, that a jury would feel clear in saying that such custom was known to the plaintiff at the time of the making of the contract." Thomas v. Charles (Ky.) 119 S. W. 752, 754.

Such custom, when relied on as a defense, must be pleaded before evidence of it may be admitted. Mowbray & Robinson Co. v. Kelley, 170 Ky. 271, 185 S. W. 1130; Bender v. South, 189 Ky. 623, 225 S. W. 504. A carrier may by custom establish a rule to receive and unload passengers at any convenient point between the termini of its route manifestly for the accomodation of the passengers, as well as to promote its business. So doing is a valuable privilege to the prospective passenger and an advantage of tremendous value to the carrier. From the evidence in this case this rule or custom of the appellee has been established and enforced constantly since it first began business. It therefore may be regarded as a permanent one, and not made for a particular occasion or emergency. If its action by its acceptance of the engagement from the Drake Hotel by the two prospective passengers was a private arrangement, or the act of the carrier in pursuance to a private rule or regulation, a different question would be presented. In such event the appellant would be entitled to notice of the existence of such private rule or regulation before she would be affected by it. See authorities, supra. The appellant insists that she was refused passage and transportation because of her color and race. It will be noted that while she alleges in her petition that she is of the colored race, she does not charge in her petition that she was refused transportation because of color or race. The language of the petition is, "that she was discriminated against by said defendant, its agents or employees without good cause," not because of her race or color. No rule, regulation, custom, or usage may be relied upon by a carrier which will permit it to discriminate against

or in favor of a passenger on account of his race or color. Such is intolerable and will not be countenanced by the courts. She was entitled at the hands of appellee, its agents and servants, to equal and like accommodation in any and all respects to those accorded or given to white persons. But she contented herself by alleging in her petition that she was discriminated against "without good cause" and we are not authorized to construe and apply her pleadings except as it is written. It is a well-known rule that the pleading must be construed most strongly against the pleader. Neekamp v. Damron, 219 Ky. 517, 293 S. W. 1081; McBride v. Alles, 222 Ky. 725, 2 S. W. (2d) 391. It is appellant's fault, if she desired this question presented as an issue or as the basis of her cause of action, for not definitely and positively alleging that she was refused transportation because of her race or color. The separate coach law of the state applies with like effect to both white and colored passengers using the railroads for travel. The Legislature has not extended it to bus lines. Conley v. Central Ky. Traction Co., 152 Ky. 764, 154 S. W. 41; Quinn v. L. & N. R. R. Co., 98 Ky. 231, 32 S. W. 742, 17 Ky. Law Rep. 811; Wood v. L. & N. R. R. Co., 101 Ky. 703, 42 S. W. 349, 19 Ky. Law Rep. 924; L. & N. R. R. Co. v. Renfro's Adm'r, 142 Ky. 590, 135 S. W. 266, 33 L. R. A. (N. S.) 133.

In the discharge of its duty as a public carrier, a bus company must use their public conveyances and buses, owned and set apart by it for that purpose, for the transportation of passengers, without favor or discrimination, to all persons offering themselves for transportation who pay or are willing to pay the customary charges, unless such person is objectionable on account of contagious disease or some abnormal condition, or of bad, dissolute, or doubtful character, such as those who interfere with the carrier's patronage. See note to Pearson v. Duane, supra, 18 L. Ed. 448. It must receive, treat, and transport all persons, affording the same convenience, safety, and protection of health, without regard to race, creed, or color, or previous condition of servitude. Crescent Coal Co. v. L. & N. R. R. Co., 143 Ky. 73, 135 S. W. 768, 33 L. R. A. (N. S.) 442. A common carrier of passengers for hire has the right, in the absence of a statute, to prescribe regulations for the separation of white and colored passengers, giving equal and like protection and accommodation to both. Ohio Valley Ry.'s Rec. v. Lander, Etc., 104 Ky. 431, 47 S. W. 344, 882, 20 Ky. Law Rep. 913, and cases cited.

20

In Day v. Owen, supra, an action was instituted to recover damages because of a refusal to allow Day, a colored man, to take cabin passage on defendant's boat from Detroit to Toledo. The Supreme Court of Michigan, in the case used this language:

"The refusal to allow plaintiff the privilege of the cabin, on his tendering cabin fare, was nothing more or less than denying him certain accommodations, while being transported, from which he was excluded by the rules and regulations of the boat. All rules and regulations must be reasonable; and to be so, they should have for their object the accommodation of the passengers. . . . As the duty to carry is imposed by law for the convenience of the community at large, and not of individuals, except so far as they are a component part of the community, the law would defeat its own object if it required the carrier, for the accommodation of particular individuals, to incommode the community at large." West Chester & Phila. R. R. Co. v. Miles, 55 Pa. 209, 93 Am. Dec. 744; Com. v. Power, supra: Ohio Valley Ry.'s Rec. v. Lander, supra.

This pronouncement of the Michigan Supreme Court is peculiarly applicable to the facts of this case. The appellant insists that her ticket entitled her to transportation on the 4:15 bus and the carrier was without right to adopt and enforce, to promote its business and for the convenience and accommodation of the community at large, a regulation or rule or custom and usage which deprived her of the privilege of traveling on that particular bus at that particular time, however reasonable and essential same may be to it. She insists her right to that privilege was inviolate and superimposed an absolute duty on the appellee, and, because of its failure to permit her to exercise such privilege, it is liable to her in damages. We know of no rule that requires a common-carrier of passengers for hire to yield to the disposition of passengers, arbitrarily to determine for themselves as to the coach or vehicle in which they may take passage. They are entitled to be transported within a reasonable time without discrimination and without favoritism or partiality, but are without right to select the coach or vehicle or the seat thereon which they will occupy. Day v. Owen, supra. C. & O. Ry. Co. v. Wells, 85 Tenn. 615, 4 S. W. 5; West Chester & Phil. Railroad Co. v. Miles, 55

Pa. 209, 93 Am. Dec. 744; Murphy v. Western A. R. Co. (C. C.), 23 F. 637; McGuinn v. Forbes (D. C.), 37 F. 639.

By the allegations of her petition to which we have alluded, she recognized it to be the duty of the appellee (a) to carry passengers only to the extent of the capacity of the bus; (b) its right to refuse admittance to passengers after its seating capacity was exhausted; (c) the right of appellee to adopt and enforce reasonable rules and regulations, and her duty to submit to their enforcement. In the presentment of her case here she recedes from these admissions in her pleadings and insists that it was only her duty to submit herself to written rules, and that appellee was without right to refuse her admittance if a seat in the bus was not physically occupied by another passenger. While it was the duty of appellee to admit passengers as long as it had a seat in its bus not at the time physically occupied or previously engaged by another passenger, it was its corresponding duty not to permit its bus to be overcrowded with passengers. If it permitted its vehicle to be overcrowded, and, by reason thereof, a passenger was injured, it would have been liable in damages to such injured passenger. Southern C. & C. S. R. v. Harris, 152 Ky. 750, 154 S. W. 35. We cannot say, in the light of the authorities, and under the proven facts, that the trial court erred in the admission of parol testimony as to the existence and operation of its oral rule or regulation which was interposed as a defense, nor in his construction of the same.

The insistence that the verdict is against the preponderance of the evidence is largely based upon the ground that the court erred in admitting evidence of the oral rule or regulation relied on. Our views hereinbefore expressed dispose of this phase of the case. The appellant and her witnesses testified that the appellee's driver acted impudent and insulting toward her at the time he refused to admit her to take passage on the bus. This alleged tortious conduct is not relied on in the petition, and such evidence was not admissible as evidence upon which a recovery could be had, but it was admissible as part of the res gestæ. The appellant did not set up in her petition as part of her cause of action the tortious conduct of the driver about which she and her witnesses testify. Therefore, she was not entitled to an instruction authorizing a recovery predicated thereon. Edge v. Ott, 151 Ky. 672, 152 S. W. 764; Aetna Life Ins.

Co. v. McCullagh, 195 Ky. 136, 241 S. W. 836. There is a direct and positive conflict between the witnesses of appellee and appellant as to what was said and done at that time, and it was a question for the jury under appropriate instructions to determine the verity of the conflicting testimony. It is a rule of venerable standing that this court will not reverse a judgment because the jury believes one set of witnesses rather than another. Chaney v. Com., 149 Ky. 464, 149 S. W. 923; Southern Ry. Co. v. Alford, 150 Ky. 808, 150 S. W. 985; Ætna Life Ins. Co. v. Rustin, 151 Ky. 103, 151 S. W. 366; Anderson County Board v. Southern Ry. Co., 152 Ky. 278, 153 S. W. 421.

In the instructions given by the court to the jury, the court set out such facts as in law constituted "a reasonable rule," and thus the facts upon which the rule to be reasonable, within the meaning of the law, were stated in the instructions. The appellant now urges that the question whether the rule was reasonable should have been submitted to the jury. The interpretation and reasonableness of the rule was one for the court and not for the jury. We have discussed this question elsewhere and it is not necessary or required that we again discuss it under this topic. However, the interested reader is referred to the case of Pullman Co. v. Krauss, 145 Ala. 395, 40 So. 398, 4 L. R. A. (N. S.) 103, 8 Ann. Cas. 218, and notes, for a thorough consideration of the question.

Another complaint is made that the court erred in refusing to give to the jury instructions offered by the appellant. The instructions offered were written on the theory that the separate coach law, section 795 Ky. Statutes et seq., apply to a person, company, or corporation operating a bus line as a common corrier. The language of this statute does not include such carrier of passengers. In the absence of a statute, the common law must be looked to for the applicable law. A further difference between instruction No. 4 offered by her and those given by the court, is, it required the defendant to give actual notice of the rule relied upon as a defense before it could affect her right to recover. The authorities, cited supra, bearing on the subject of notice is sufficient consideration of this question. In addition, it may be said that in her petition, from which we have heretofore quoted, she conceded that the appellee was under no obligation to accept her for transportation if the seating capacity of the bus was taken when she tendered herself

as a passenger, and that she tendered herself subject to the rules of the company. The instruction offered recedes from this position, and requests the court to place upon the appellee a burden which her pleading conceded did not rest upon it. The court did not err in refusing the instructions offered and in granting those given to the jury. The court was careful to say to the jury by instruction No. 3 that "The defendant, Bus Company, is required under the law to make no discrimination between persons applying for passage on its bus on account of race or color." The appellant as we have stated, charged that the appellee refused her passage "without good cause," and did not thereby or otherwise charge the appellee with discrimination on account of her race or color, nor seek damages on account thereof, yet the court, through an abundance of caution, and in order to secure absolute assurance that the jury would not suffer itself to discriminate against her on account of race or color, properly gave it to the jury. Having failed in her petition to allege as an element of her cause of action that she was refused admission to, and transportation on, its bus because of race or color, she is not entitled to, and cannot, complain, because that theory was not presented by an instruction. Edge v. Ott, supra; Ætna Life Ins. Co. v. McCullagh, supra. She was entitled to a fair and impartial trial without discrimination because of her color or race, and instruction No. 3 is all the law could do to secure her this type and character of trial. Technically, her pleadings did not authorize its giving to the jury.

The fact she purchased a ticket and was transported by appellee on the day of the occurrence complained of on one of its busses, and accorded the same treatment and service as other passengers, both white and colored, so far as the record shows, it doubtless was astonishing to the jury that she at 4:15 p. m. of the same day would be mistreated and discriminated against by the same bus company and its employees as she now complains. The fact she was received and transported with convenience, comfort, and satisfaction in the forenoon of the same day, by the same bus company and its employees, was conducive to persuade the jury that there was possibly a misconstruction of the conduct of appellee's driver on the part of herself and witnesses. The jury may have concluded that oversensitiveness was the basis of the complaint of appellant. It was her duty, even if correct in her contention, to minimize her damages. Byars v.

Hammock, 205 Ky. 684, 266 S. W. 365; Gaffney v. Switow, 211 Ky. 232, 277 S. W. 453. She was afforded an opportunity and was sought for transportation on the 5 p. m. bus, and voluntarily refused it, and whatever damage she sustained, by reason of having been delayed thereafter, was of her own making, and appellee cannot be held liable therefor.

Other objections were made, and exceptions saved, during the progress of the trial, which are not discussed in brief of counsel for appellant and for this reason we regard same waived. On the whole case after close scrutiny and painstaking examination of the record, we are convinced that appellant has received at the hands of the jury a fair and impartial trial, under correct and appropriate instructions, given by a fair and impartial judge.

Wherefore the judgment is affirmed.

Whole court sitting.